## In re The Wilcox and Howe Company.

Third Judicial District, Bridgeport, Oct. Term, 1897. Andrews, C. J., Torrance, Baldwin, Hamersley and Hall, Js.

Chapter 212 of the Public Acts of 1895 provides that all contracts for the sale of personal property (with certain exceptions) conditioned that the title thereto shall remain in the vendor after delivery, shall be in writing, and acknowledged and recorded within a reasonable time in the town clerk's office in the town where the vendee resides; and that all sales not so made shall be held to be absolute sales, except as between the vendor and the vendee "or their personal representatives." *Held* that in view of the remedial nature of the statute, the receiver of an insolvent corporation, who had come into possession of certain machinery which had been purchased by the corporation under conditional contracts of sale not made in conformity with the statute, ought not, in respect to such property, to be regarded as the "personal representative" of the corporation, but rather as the agent of creditors, whose rights he was appointed to protect and enforce; and therefore that the machinery must be regarded as the absolute property of the corporation, so far as it might be needed by the receiver for the payment of debts.

The term "personal representatives" has acquired no fixed, technical meaning. It may under certain circumstances be held to include trustees in insolvency and receivers, as well as executors and administrators; for the former for some purposes as truly represent the debtor as the latter do the deceased.

A chattel mortgage not recorded until long after the receiver of the mortgagor had taken possession of the property, is not valid as against him.

Recitals in a chattel mortgage or conditional contract of sale, which might perhaps have estopped the vendee from claiming that the instrument had not been properly recorded, cannot estop the latter's receiver, since in this particular he represents creditors.

[Argued November 3d, 1897—decided January 5th, 1898.]

APPLICATION to the Superior Court in Fairfield County by a receiver, to determine the rights of certain creditors who, as conditional vendors, claimed title to machinery in the receiver's possession; facts found and case reserved by that court, *Elmer, J.*, for the consideration and advice of this court.

The material facts in the agreed statement, are these:

The Wilcox & Howe Company is a joint stock corporation duly organized under the laws of Connecticut, and located and having its place of business in the town of Huntington, in Fairfield county. It is largely indebted and insolvent. The receiver of said corporation was duly appointed on the 8th day of October, 1896, upon an application for the winding up of the affairs of said company, pursuant to the statute. Since the 8th of October, 1896, the receiver has been engaged in the duties of his appointment, and the affairs of said corporation are now being wound up in the Superior Court for Fairfield county.

All of the respondents to said application, except J. J. McCabe who did not appear, now are, and at all times since the appointment of said receiver have been, ready and willing to perform the agreements made and to be performed by them respectively, as set forth in the contracts hereinafter referred to. All of the respondents notified the receiver, within a reasonable time after his appointment, that the several machines claimed to belong to them respectively, as hereinafter described, were in the possession of said Wilcox & Howe Company, at the time of his appointment, under the terms of the several contracts hereinafter set forth. The receiver upon taking possession, under his appointment, of the property of the corporation, found in its shop and in use

by it, certain machinery which had been delivered to it by the parties hereinafter named under the agreements hereinafter described.

The Waterbury Farrell Foundry and Machine Company, of Waterbury in this State, had delivered machinery to the Wilcox and Howe Company, under three separate written agreements in the form of, and called, "conditional leases," containing, among other things, an agreement that upon the payment in full of the price of said machinery, in the form of rent, said machinery should become the property of the Wilcox and Howe Company. The leases also contained the following provisions, among others: "And the said Wilcox & Howe Co. agrees to have this lease recorded immediately, if by law required to be recorded in the State where said Wilcox & Howe Co. is located and doing business. And if default shall at any time be made in the payment of rent as aforesaid, or any of the agreements herein shall be violated, then this lease shall be void." Said three written agreements were dated respectively December 14th, 1895, May 25th, 1896, and June 25th, 1896; each was witnessed by one witness; none of them were acknowledged, and none of them were ever recorded in the town clerk's office of the town of Huntington where said corporation, the Wilcox & Howe Company, was located. Prior to the appointment of said receiver certain payments had been made under the first two leases, but nothing had been paid under the last one. Within the time limited by the court for the presentation of claims against the Wilcox & Howe Company, the Waterbury Company presented a claim to the receiver for the balance, with interest, due under said agreements, and also claimed that the payment of the amounts due was secured under said agreements, which, it further claimed, were as binding on said receiver as the same would have been on the Wilcox & Howe Company.

The Merrill Brothers of Brooklyn in the State of New York had delivered machinery to said corporation, under a written agreement which reads as follows: "This agreement made the 13th day of January by us, The Wilcox and Howe Company, of Derby, Connecticut, witnesseth: That in con-

sideration of the sale and delivery to us of the drop hammers hereinafter mentioned by Merrill Brothers of Brooklyn, New York, and of one dollar by said Merrill Brothers in hand paid, we have bargained and sold by these presents to said Merrill Brothers, two certain drop hammers now in our factory at Derby, Connecticut, to them, their representatives and assigns forever. This sale is conditional upon the payment by us, of each and every of twelve promissory notes given in payment for said chattels, aggregating the sum of twenty-four hundred ($2,400) dollars, to wit: one note due March 20th, 1896, for $200, and eleven other notes for $200 each, due successively at the end of every succeeding thirty days thereafter, with interest. It is expressly agreed that upon default in the payment of the principal or interest of any of said notes, or the removal of said drops from said factory, or in case said Wilcox & Howe Company shall sell, encumber, or suffer to be encumbered by any lien or process, the said drop hammers, the whole of said principal sum shall become due with interest, and said drop hammers shall become the property of said Merrill Brothers, and they may enter the premises where said drop hammers are, and take, carry away and dispose of the same. Upon payment of all of said notes and interest in the manner and at the time hereinbefore provided, and the due observation of the other condition herein, these presents shall have no effect. In witness whereof, we have hereunto set our hands and seal, the day and year first above written. The Wilcox & Howe Co., Isaac P. Howe, Sec. and Treas. (Seal.) Signed, sealed and delivered in presence of Edwin B. Gager. Helen E. Bailey." This instrument was duly acknowledged, and was recorded in the office of the town clerk for the town of Derby, on the 9th day of March, 1896, and in the office of the town clerk for the town of Huntington, on the 6th day of January, 1897. Merrill Brothers claimed that the machinery described in said instrument either belonged to them, or that they had a chattel mortgage thereon to secure the sum due to them.

The Pratt and Whitney Company of Hartford in this State

had delivered machinery to the Wilcox and Howe Company, under a written agreement dated June 8th, 1896, in the form of a lease, containing among other things an agreement, in substance, that upon the performance of certain conditions, including the payment of the price of said machinery with interest, said machinery should become the property of the Wilcox and Howe Company. This instrument was not acknowledged, but it was on the 24th of August, 1896, recorded in the office of the town clerk for the town of Huntington.

J. J. McCabe and Company of the city of New York had delivered certain machinery to the Wilcox and Howe Company, under and pursuant to the following writing: " Order No.    14 Dey Street, New York, Dec. 4th, 1895. Consignment account, Stored at Wilcox & Howe Co.'s, Birmingham, Conn. to J. J. McCabe, Dr. To 1 new Upright Drill, 24″ swing, with back gears, . . . . $150.00; 1 new Engine Lathe, 14″ swing, 6 ft. bed, with . . . . $237.50; $387.50. Shipped via. N. Y., N. H. & H. R. R. Terms: Rental 5% each month for 12 months. Same to apply on purchase if the machines are to be retained. Payments to include interest at 6%." No contract or instrument in writing, concerning the machinery described in said writing, was ever recorded in the town clerk's office of the town of Huntington.

The New Haven Manufacturing Company of New Haven in this State had delivered machinery to the Wilcox and Howe Company, under and pursuant to a written agreement, in the form of a receipt, in which, in substance, it was agreed that the machinery mentioned therein, which the Wilcox and Howe Company therein acknowledged it had received from the New Haven Company, should be and remain the property of said New Haven Company till the price of the same, stated in said agreement, should be paid in full, when said machinery should become the property of said Wilcox and Howe Company. This instrument was dated the 24th day of October, 1895, but it was not acknowledged, nor was it ever recorded in the town clerk's office of the town of Huntington.

In re Wilcox and Howe Co.

The Farist Steel Company of Bridgeport in this State had delivered to the Wilcox and Howe Company a machine called a "Merrill Drop," under a parol agreement by which the latter company was to pay to the Steel Company twenty dollars per month as a rental, and the title to said machine was to vest in the Wilcox and Howe Company when four hundred dollars, the purchase price, had been paid in full. There was no written contract as to said drop, and nothing is upon record pertaining to the same in the town clerk's office of the town of Huntington.

Prior to the appointment of the receiver, the Wilcox and Howe Company had made payments on account, under said agreements, to Merrill Brothers, the Farist Steel Company, J. J. McCabe & Company, and the New Haven Manufacturing Company. Nothing had been paid on account to the Pratt and Whitney Company. Each of said last five named parties claimed that the amounts with interest due to them respectively, under said agreements, were secured to each of them upon the machinery described in said agreements, and that said agreements were as binding upon the receiver as they would be upon the Wilcox and Howe Company. All of said machinery has hitherto remained and still is in the possession of the receiver, and has been used by him from time to time in the prosecution of the business of the company as conducted by him, and he has paid nothing on account thereof.

The questions reserved are stated as follows: 1st. Are the several contracts mentioned in said statement of facts binding upon said receiver in the same manner as they would have been on said Wilcox & Howe Company; or does said receiver hold said machines mentioned as the absolute property of said company? 2d. Do said several parties mentioned in said statement of facts, or any of them, retain title to the machinery therein mentioned, as against said receiver? 3d. Ought said several claims to be allowed as general unsecured claims? 4th. Shall said several sales mentioned in said statement be held to be absolute sales, as between the vendors and said receiver? 5th. Do said Merrill Brothers,

as against said receiver, hold any title in a lien on the machines described in said agreement of January 13th?

*Edwin B. Gager*, for the receiver.

The contracts in question are undoubtedly conditional sales. *Robinson's Appeal*, 63 Conn. 290; *Beach's Appeal*, 58 id. 464; *Appleton* v. *Norwalk Library Corporation*, 53 id. 4; *Loomis* v. *Bragg*, 50 id. 228; *Hine* v. *Roberts*, 48 id. 267. The real question is whether the language of the Act of 1895 includes a receiver of a corporation appointed under the statute for the winding up of corporations. The term "personal representatives," so far as we have been able to find, is uniformly held to mean "executors and administrators," and it means nothing else. *Pixley* v. *Eddy*, 56 Conn. 338; *Oates* v. *Union Pacific R. Co.*, 104 Mo. 514; Black's and Bouvier's Law Dict. Under the decisions of this court the receiver of a corporation represents the creditors, and as such representative has the same rights that an attaching creditor would have; and therefore with respect to the statute in question, he must be considered as standing in the position of an attaching creditor. *Greene* v. *Sprague Mfg. Co.*, 52 Conn. 361; *New Haven Wire Co. Cases*, 57 id. 387; *In re Waddell-Entz Co.*, 67 id. 333. The rights of a receiver are substantially those of a trustee in insolvency. *Shaw* v. *Smith*, 48 Conn. 313; *Shipman* v. *Ætna Ins. Co.*, 29 id. 254.

*Nathaniel R. Bronson, John W. Bristol, Carl Foster*, with whom was *A. B. Beers*, and *Daniel E. McMahon*, for the different claimants.

The Act of 1895 is not to be extended by construction "beyond the clear import of the language used." Suth. on Stat. Constr., §§ 139, 290, 400; *State* v. *Costello*, 61 Conn. 497, 499; *People* v. *Palmer*, 109 N. Y. 110, 117, 118. The conditional sales in question are within the exception of the Act: (1) because the receiver derives no title to the property of the corporation, and *a fortiori* no title to the property in question; (2) because he represents and stands in the place of the corporation so far as this question is concerned; and (3) because

he is the "personal representative" of the corporation, the conditional vendee. Our statute (Gen. Stats. § 1322) gives the *right of possession* to the receiver, but it is the general principle that a receiver, unless vested with a title to the property by statute, has no title thereto. *Chicago Union Bank* v. *Kansas City Bank*, 136 U. S. 223, 236; *Quincy M. & P. R. Co.* v. *Humphreys*, 145 id. 82, 97; *Ellis* v. *B. H. & E. R. Co.*, 107 Mass. 1, 28. There are no cases in Connecticut which support a different doctrine. But if it be assumed that some title or right of lien does pass to a receiver of a joint stock corporation, under our statute, still the receiver represents and stands in the shoes of the corporation for most purposes, and can enforce only such rights as the corporation itself could enforce. *Greene* v. *Sprague Mfg. Co.*, 52 Conn. 361; *Republic L. Ins. Co.* v. *Swigert*, 135 Ill. 150, 165; *Farnsworth* v. *Woods*, 91 N. Y. 308, 313; *Ins. Co.* v. *Hill*, 60 Me. 178, 182; *Waterhouse* v. *Jamieson*, L. R. 2 Scotch & Div. App. 29, 36; *In re Duckworth*, L. R. 2 Ch. App. Cas. 578, 580; *Pittsburg Carbon Co.* v. *McMillin*, 119 N. Y. 53. But in any event, the receiver of such a corporation is the "personal representative" of the corporation, because he has only such rights as the corporation itself had, except in cases of fraud. High, Rec., § 315; *Curtis* v. *Leavitt*, 15 N. Y. 44. The statutory exception in terms applies to every conditional vendor and vendee, and therefore includes corporations. The statute clearly contemplates that every such vendor or vendee may have "personal representatives." A fair construction of these words would seem to be that they mean such legal representatives as have no greater rights than those whom they represent had. Such a construction would bring within the statute *bona fide* purchasers for value, and attaching creditors, but would exclude assignees who had paid nothing or who took with notice, bailees without hire, and all persons claiming under the conditional vendee who acquire no title to or lien upon the property in question. Gen. Stats. § 2961; 2 Jon., R. P. §§ 1385, 1386; *Fosdick* v. *Schall*, 99 U. S. 235, 250; *Central Trust Co.* v. *R. R.*, 48 Fed. R. 868, 872. The receiver was entitled to a reasonable time

to elect what course he would adopt toward this machinery, but having continued to use it after being notified of the conditions of the sale, should be bound by the terms of the contract. Sm. Rec., § 125; 2 Platt, Lease, 435; *Quincy, etc., R. Co.* v. *Humphreys*, 145 U. S. 82; High, Rec., § 273; *Sunflower Oil Co.* v. *Wilson*, 142 U. S. 313.

TORRANCE, J. The statute (Public Acts of 1895, Chap. 212) under which the questions presented upon this reservation arise, reads as follows: " Section 1. All contracts for the sale of personal property, except household furniture, musical instruments, bicycles, and such property as is by law exempt from attachment and execution, conditioned that the title thereto shall remain in the vendor after delivery, shall be in writing, describing the property, and all conditions of said sale, acknowledged before some competent authority, and recorded within a reasonable time in the town clerk's office in the town where the vendee resides.

" Sec. 2. All conditional sales of personal property which shall not be made in conformity with the provisions of the preceding section shall be held to be absolute sales, except as between the vendor and the vendee or their personal representatives, and all such property shall be liable to be taken by attachment and execution for the debts of the vendee, in the same manner as any other property not exempted by law."

Leaving out of consideration for the moment the Merrill Brothers' contract, there can be no doubt that all the others are, and were intended to be, conditional contracts of sale; for in each, by force of the contract, the general property in the subject-matter of the contract is ultimately to pass, for an agreed price in money, from its owner to the Wilcox & Howe Company, on the performance by it of certain conditions; and where this is intended to be the effect, operation and main purpose of the contract, it will, as a rule, be held to be one of conditional sale, without much regard to the name or the form the parties may give to it. *Hine* v. *Roberts*, 48 Conn. 267; *Loomis* v. *Bragg*, 50 id. 228; *Beach's Appeal*, 58 id. 464; *Robinson's Appeal*, 63 id. 290.

Counsel for Merrill Brothers claims that the contract with them should also be regarded as one of conditional sale, rather than as a chattel mortgage; and for the present we will so regard it. All of these contracts, then, are for the sale of personal property within the operation of the statute, and they are upon condition that the title thereto shall remain in the vendor after delivery, and are consequently conditional contracts of sale within the meaning of the statute. None of these agreements fully complied with the provisions of the first section of the Act in question. The Waterbury Company's agreements were not witnessed, nor acknowledged, nor recorded as the Act requires. The Merrill Brothers' agreement was not recorded in the town of Huntington till long after the receiver was appointed and qualified. The Pratt and Whitney Company agreement was not acknowledged as the Act requires, nor at all. The McCabe & Company's agreement can hardly be said to have been in writing within the meaning of the statute, for it was a mere statement signed by no one; and it was not witnessed, acknowledged, nor recorded as required by the Act. The New Haven Manufacturing Company agreement was not witnessed nor acknowledged, nor recorded as the Act requires; and the Farist Steel Company's agreement was not in writing at all.

This being so, the conditional sales evidenced by these conditional contracts of sale, by force of the statute, are to "be held to be absolute sales, except as between the vendor and the vendee or their personal representatives."

Under the statute, then, as between all these conditional vendors and the Wilcox and Howe Company, or the personal representatives of that company, these contracts remain conditional contracts of sale, with the property in this machinery still in the vendors; while as between the vendors and the creditors of the Wilcox and Howe Company, the machinery covered by these contracts is the absolute property of that company. And the main, important question in the case is, whether the receiver is the "personal representative" of the company as to these contracts, within the meaning of the statute.

Experience has shown that great evils have resulted to creditors and *bona fide* purchasers, from the existence, without notice to the world, of conditional sales like those here in question; and as this statute was evidently passed to remedy to some extent those evils, it should receive such a construction as will best carry out the purpose of the statute. One main purpose and object of the statute is to protect creditors of, and *bona fide* purchasers from, the vendee in such contracts. As to them and as to those who by a limited or by a universal succession represent them, the sale is an absolute one. They take the benefits of the contract without its burdens. As between the vendor and vendee and their personal representatives, the sale remains as it was made, a conditional one. They, as between themselves, take alike the benefits and the burdens of the contract. The statute plainly embraces all contracts of the kind here in question; contracts made by natural persons who may die and be represented by universal successors known as executors or administrators, and contracts made by natural persons whose estate, in their lifetime, may through insolvency or bankruptcy proceedings pass to trustees or assignees as their limited successors and representatives; and contracts made by corporations whose estate, during the existence of the corporation or after its dissolution, may through like proceedings, be transferred to receivers or trustees or assignees as the limited successors and representatives of the corporation.

Counsel for the receiver contends that the words " personal representatives," as used in this statute, mean executors and administrators only, and it may be conceded that this is their usual and ordinary meaning when the personal representatives of deceased persons alone are spoken of. *Pixley* v. *Eddy*, 56 Conn. 336, 338. But the statute is dealing with all contracts of this kind, as well those made by natural persons who after death can be represented by executors or administrators, as those made by corporations who cannot be so represented; and to give to the words in question the narrow construction contended for would, to a certain extent at

least, defeat the manifest intention of the legislature in the passage of this Act.

At common law the heir succeeded to the real estate of the deceased ancestor, and was for this reason sometimes called a "real" representative; while the executor or administrator who succeeded to the personal estate of the deceased, was for this reason called the personal representative. *Card* v. *Card*, 39 N. Y. 317, 323.. But the words "personal representatives" standing alone, do not necessarily include only executors and administrators; they have acquired no such fixed, definite, technical meaning. A trustee in insolvency and an assignee in bankruptcy, for many purposes stands in the shoes of the debtor and represents him, and speaking generally is, to the extent of the estate committed to his charge and for such purposes, as truly the personal representative of the debtor, as the executor or administrator is the personal representative of the deceased; and for all practical purposes, and speaking generally, no distinction can be made, in this respect, between a trustee in insolvency or an assignee in bankruptcy, and a receiver appointed under our statutes. We think the words "personal representatives," as used in this statute, may reasonably be held to include in addition to executors and administrators, at least trustees in insolvency and receivers. For most purposes the trustee in insolvency and the receiver stand in the shoes of the debtor and represent him; but they also, for some purposes, stand in the shoes of creditors and represent them. "While it is true that the trustee can exercise some rights which are not in the insolvent, such as the setting aside of preferences and. the recovery of property conveyed in fraud of the rights of creditors, yet as a general rule he is entitled to have and do only what the insolvent could have had and done; must take the estate with the burdens placed thereon by him, with all outstanding equities against it." *Merwin* v. *Austin*, 58 Conn.. 22, 34. " The receiver for most purposes represents and stands in the place of the corporation, and can enforce only such contracts and rights as it could enforce. But when acts have been done by the corporation in violation of law and in fraud

of creditors, the receiver, who for all beneficial interests connected with the trust is regarded as the representative of the creditors, may repudiate their acts, taking care, however, that third parties who are without fault do not suffer. Such cases, however, are exceptions to a general rule, and it should clearly appear that the case is within the exception." *Greene* v. *Sprague Mfg. Co.*, 52 Conn. 330, 361; *Litchfield Bank* v. *Peck*, 29 id. 384; *New Haven Wire Co. Cases*, 57 id. 352.

As the receiver is thus the representative of the corporation for some purposes, and may for such purposes be called its personal representative, within the meaning of the statute, and as he also represents creditors for some purposes, the precise question here is whether the receiver, *quoad* these conditional contracts of sale and the property covered by them, is the personal representative of the corporation within the meaning of the statute; and we are of opinion that he is not.

The commencement of proceedings for the appointment of a receiver of a corporation, or of a copartnership, dissolves all attachments and all levies of executions not completed, made within sixty days next preceding, on the property of the corporation or copartnership. Public Acts of 1895, Chap. 96. And by the appointment of a receiver the rights of creditors to attach or levy upon such property are suspended. *New Haven Wire Co. Cases*, 57 Conn. 352; *Longstaff* v. *Hurd*, 66 id. 350, 359. The law thus disables the creditors from interfering with that property, or from in any way appropriating it for their sole benefit; but in so doing it does not lessen their rights with respect to such property, nor does it destroy them; it merely provides for their protection and enforcement in another way. And whenever the law thus disables creditors from helping themselves, whether by proceedings in insolvency or bankruptcy, or by the appointment of a receiver or otherwise, it provides for the enforcement of whatever rights they may possess against the property of the debtor, through the instrumentality of its agent, the trustee, assignee or receiver. For the purpose of enforcing any such right which the creditor could have

enforced for his sole advantage, and for the purpose of holding or taking any property which a creditor could hold or take by law, or for recovering back any property of which a creditor could avail himself in payment of his debt, the trustee, assignee, or receiver is in effect the creditor, as this court has repeatedly decided. *Swift* v. *Thompson*, 9 Conn. 63; *Rood* v. *Welch*, 28 id. 157; *Shipman* v. *Ætna Ins. Co.*, 29 id. 245; *Gaylor* v. *Harding*, 37 id. 508; *Taylor* v. *Atwood*, 47 id. 498; *Shaw* v. *Smith*, 48 id. 306; *Litchfield Bank* v. *Peck*, *Greene* v. *Sprague Mfg. Co.*, and *New Haven Wire Co. Cases*, *supra*.

It is of no importance, so far as the present discussion is concerned, whether such agent of the law takes the technical title to the debtor's property, or takes only the possession of it; in either case he is the sole agent through whom, and through whom alone, as a general rule, the rights of creditors can be protected and enforced; and in protecting and enforcing those rights he is the representative of creditors and not of the debtor.

In the case at bar, the machinery covered by the conditional contracts of sale was, as to the creditors of the Wilcox and Howe Company, the absolute property of that company. It was available to the creditors in payment of their debts, and could have been appropriated for that purpose by attachment and levy of execution. When it came into the hands of the receiver of the insolvent corporation, the law sequestered it, on behalf of the creditors and for the benefit of all of them, as the absolute property of the corporation, just as fully and just as effectually as the creditors could have sequestered it by attachment and levy. For the purpose of making that sequestration effectual the receiver is the representative of the creditors, and holds the property, as they would have held it by proper proceedings, as the absolute property of the corporation. In a case like the present, a dispute as to the ownership of property between the receiver and the conditional vendors, is, in effect, and must be regarded as, one between such vendors and the creditors of the conditional vendee; and in such a case the

statute imperatively requires that the property in dispute shall be held to be the absolute property of the conditional vendee.

The claim is made on behalf of Merrill Brothers that their contract, if not valid as a conditional sale, may be good as a chattel mortgage. But it was not recorded as such a mortgage is required to be recorded, until long after the receiver took possession, and therefore as to him, as the representative of creditors, it was not a valid mortgage under the circumstances. It was also claimed on behalf of Merrill Brothers that the Wilcox and Howe Company would be estopped by the recitals in the contract, from claiming that the contract was not properly recorded as a chattel mortgage or conditional contract of sale, in the town of Derby. Whether the company would be so estopped or not, we have no occasion to decide, for it is certain that the receiver as the representative of creditors is not so estopped.

The Superior Court is advised that all the machinery covered by all the contracts here in question, should be held by the receiver as the absolute property of the Wilcox and Howe Company, so far as the same may be necessary for the payment of its debts, and that the claims of the conditional vendors should be allowed only as general unsecured claims.

In this opinion the other judges concurred.