GEORGE M. CURTIS, RECEIVER, *vs.* HENRY J. LEWIS ET AL.

Third Judicial District, Bridgeport, October Term, 1901.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, Js.

A receiver of an insolvent corporation is entitled to have its real estate relieved from liens which, though valid against it, are fraudulent as against its creditors.

A mortgagee who for years intentionally refrains from recording his deed, for the purpose of concealing its existence from the public and enabling the mortgagor to maintain a false credit and pecuniary standing, cannot, upon learning of the mortgagor's impending insolvency, record his deed and thereby gain a preference over the unsecured creditors. Such a transaction is essentially fraudulent as respects the other creditors of the mortgagor.

A transaction valid in its inception may become fraudulent through the manner of its completion.

Argued November 8th, 1901—decided January 8th, 1902.

ACTION to determine the validity of certain mortgages held by the defendants, brought to the Superior Court in New Haven County and referred to a committee by whom the facts were found; the court, *Shumway, J.,* accepted the report of the committee and reserved the questions of law arising thereon for the consideration and advice of this court. *Judgment advised for plaintiff.*

On November 22d, 1900, the stockholders of the Chapman Manufacturing Company voted to institute an action against that corporation, on the ground of its insolvency, for the appointment of a receiver. The writ in such action was issued and served, and on the following day the plaintiff was appointed temporary receiver and subsequently became permanent receiver. This action is brought to set aside two mort-

gages made by the corporation. One, spoken of as Exhibit 1, was made to Isaac C. Lewis, to secure a promissory note for $10,800, on March 31st, 1891, and recorded on November 22d, 1900; it is now held by his children, the defendants, Henry J. Lewis, Martha E. Fales, and Kate A. L. Chapin. The other, spoken of as Exhibit 2, was given to Agnes D. Squire on February 23d, 1897, to secure promissory notes amounting to $4,000, and was recorded on November 22d, 1900. This mortgage was a substitute for one given to the same mortgagee on May 28th, 1894, which was also a substitute for one given to her father, George R. Curtis, prior to March 31st, 1891, which latter mortgage came to Mrs. Squire upon her father's death; the mortgage of 1897 is now held by the defendant Allen B. Squire, administrator on the estate of said Agnes D. Squire.

The plaintiff claims a judgment setting aside these two mortgages as against him.

*George A. Fay* and *William L. Bennett*, for the plaintiff.

*William B. Boardman*, for the defendants.

HAMERSLEY, J. The pleadings in this action are unnecessarily framed for the purpose of taking advantage of the provisions of " An Act concerning Civil Actions" (Public Acts of 1893, Chap. 66, p. 237), and for this reason the real cause of action is not set forth in the complaint and no material issue is raised by the answer. The reply alleges the plaintiff's cause of action, and the rejoinder serves the purpose of an answer. The validity of the two mortgages mentioned in the complaint is controlled by substantially the same considerations, and it is sufficient to refer only to the pleadings in respect to that given by Isaac C. Lewis.

The following facts appear in the admission and allegations of the reply: 1. On November 23d, 1900, the plaintiff was appointed receiver of the Chapman Manufacturing Company, which at that time owned, and since March 31st, 1891, had owned, the land in question. 2. On March 31st, 1891, said corporation executed and delivered to Isaac C.

Lewis a mortgage of said land to secure a note of $10,800. Said note and mortgage were held by said Lewis during his lifetime, and since his death have been owned by his children, the defendants Henry J. Lewis, Martha E. Fales, and Kate A. L. Chapin. Said mortgage was not recorded until November 22d, 1900, when the defendant Lewis caused it to be recorded. Said note has never been paid, nor any part thereof. 3. On November 21st, 1900, George M. Curtis and other stockholders of said corporation, representing more than one third of its capital stock, brought an action against said company, alleging that the same was in embarrassed circumstances, unable to pay its debts, and that its property was threatened with attachments, and asking for the appointment of a receiver to wind up the affairs of the corporation. 4. Said Isaac C. Lewis during his lifetime, and his said children since his decease, intentionally withheld said mortgage from record, for the purpose of enabling the said Chapman Manufacturing Company to appear to be, and to hold itself out to be, the owner of said premises, unincumbered, and to obtain credit on the faith of such ownership. 5. During the time that said mortgage was withheld from record the general creditors of said corporation were ignorant of its existence, and were deceived by the withholding of the same, and induced thereby to give credit to said corporation upon faith in its apparent record title to said premises. 6. Said mortgage was put on record by said defendants with full knowledge that a complaint for the appointment of a receiver had been signed, and was about to be served on said corporation, and that an application for a temporary receiver was about to be made. 7. Said mortgage was put on record by the defendants with full knowledge that said corporation was in failing circumstances, and was unable to pay its debts in full, and was so recorded for the purpose of obtaining a preference over the unsecured creditors of said corporation, with a view to its insolvency. 8. Said corporation was, on the 21st day of November, 1900, and ever since has been, and now is, insolvent.

The allegations numbered 3, 4, 5, 7, and 8, were denied by

the defendants in their rejoinder; the others were admitted. The case was referred to a committee to find the facts on the issues thus framed. The report of the committee was accepted, and the facts reported by that committee were found by the court.

The questions presented by the reservation are two: first, do the facts found by the trial court require that court to find the issues for the plaintiff; second, upon finding the issues for the plaintiff, what relief, if any, should be granted by the court?

The material issues presented by the pleadings are these: 1. Did the defendant intentionally withhold said mortgage from record for the purpose of enabling the Chapman Manufacturing Company to hold itself out as owner of the land, described in the mortgage, unincumbered, and to obtain credit on the faith of such ownership? 2. Were the creditors of the corporation, represented by the plaintiff receiver, deceived by the withholding of the mortgage from record, and induced thereby to give credit to the corporation? 3. Did the defendants place the mortgage on record with the knowledge that the corporation was in failing circumstances, and for the purpose of obtaining a preference over unsecured creditors, with a view to its insolvency? 4. Had the corporation been insolvent since November 21st, 1900?

We think the natural and necessary inference from the facts found by the court is that they require it to find these material issues for the plaintiff. We also think that the plaintiff, having proved the material facts alleged by him, is entitled to relief.

The appointment of a receiver on the ground of the corporation's insolvency, not only transferred to him all the property of the corporation, but also vested in him the right to have that property relieved from liens or claims, which, although valid as against the corporation, were not valid as against its creditors. As affecting the validity of the defendants' liens on the property of the corporation, his appointment was equivalent to an attachment by all the creditors. *In re Wilcox & Howe Co.*, 70 Conn. 220, 233; *Newtown Savings*

*Bank* v. *Lawrence,* 71 id. 358, 366 ; *Graham Button Co.* v. *Spielmann,* 50 N. J. Eq. 120, 124.

The defendants claim that the mortgages when given were valid ; that the mere withholding a mortgage from record is not fraudulent, and a mortgage so withheld, when recorded, is valid against all subsequent purchasers ; that the mortgages were recorded before the land mortgaged was transferred to a receiver, and before the land mortgaged was sequestrated for the benefit of all creditors ; that the facts in this case supporting the theory of equitable estoppel differ from those found in many instances of the ordinary estoppel *in pais ;* that recording the mortgages for the purpose of obtaining a preference over other creditors, with a view to insolvency, is not a conveyance preferring creditors within the letter of the law invalidating such conveyances when made with a view to insolvency ; and that these mortgages, although withheld from record for the purpose of concealing their existence, do not come within the letter of § 505 of the General Statutes, which invalidates mortgages so concealed, although they may be recorded before the commencement of insolvency proceedings.

If these claims are conceded, they do not determine the real question. That question is this : Is the whole transaction, from the giving of the mortgages to their record, of such a nature that the receiver is entitled to have the mortgages set aside as against the creditors he represents. The validity of the mortgages at their execution is not conclusive upon the fraudulent nature of this transaction. A deed may be innocent when executed and become fraudulent through the conduct of the parties in pursuing it; and a transaction, valid in its inception, may become fraudulent through the manner of its completion. *Hungerford* v. *Earle,* 2 Vern. 261 ; *Blennerhassett* v. *Sherman,* 105 U. S. 100 ; *Hildreth* v. *Sands,* 2 Johns. Ch. Rep. 35. The nature of the transaction is not altered by the fact that the lien of the original mortgages is now held through inheritance and substitution by the defendants, and may be stated thus : The corporation, while solvent, gives its notes for a large sum of money loaned to it ; it gives

mortgages of land in its possession to secure the payment of these notes; at the time of giving the mortgages, it is represented by the corporation, in one case, that recording the mortgage might cause demands to be made upon the company by its creditors, and in the other, that withholding the mortgage from record might help the credit of the company, and thereupon the mortgagees intentionally withhold the mortgages from record, for the purpose of concealing from the public the fact that a large portion of the assets of the company have been appropriated by the company to secure their debt, and therefore for the purpose of inducing any person dealing with the company to remain, or become, a creditor of the company as the owner of these assets unincumbered. This withholding from record for this purpose is continued for a number of years, until it is discovered that the company is insolvent, and until the stockholders have voted to commence the proceedings against the corporation resulting in the appointment of the plaintiff receiver, and then, with knowledge of the facts in view of the insolvency, and for the purpose of securing to themselves a preference over other creditors, the mortgagees place the mortgages on record.

Such a transaction is necessarily fraudulent. It enabled the corporation to hold itself out as the owner of land in its possession to which it had a clear record title, and which constituted a large portion of its corporate property (equalling in amount at the time of the receiver's appointment more than one fourth of its assets and nearly one fourth of its liabilities). It was calculated and intended to induce all creditors now represented by the receiver, and in fact did induce some of them, to give the corporation credit upon faith of its ownership of this land. It enabled the corporation to deceive its creditors by false representations in this matter. The defendants object to such an inference from the facts found, but we think without reason.

We cannot shut our eyes to the commonly known conditions of modern business life. The credit of a business concern, such as this corporation, must depend largely upon the rating given it by the publications concerning credit, which

have become a necessity of business life. That rating depends, in part, upon the value of unincumbered property belonging to each business house, and the amount of such property is ascertained from public records, as well as from information furnished directly by the house. A false representation intentionally made for the purpose of maintaining credit, whether made directly or by concealing for that purpose the transfer of property which is retained in possession with all the earmarks of ownership, is fraudulent; and creditors induced to become such by the general credit thus obtained are deceived by the fraud.

The defendants participated in the fraudulent transaction. It was impracticable without their continuous aid, and was consummated by their act in placing the deeds on record, in view of insolvency, for the purpose of securing to the payment of their claims only, the property which by their aid and with their knowledge had been falsely represented to the other creditors as belonging to the corporation free from any such lien.

The receiver, as representative of the creditors, is clearly entitled to have these mortgages set aside as against him. The defendants chose to put themselves on the basis of unsecured creditors, and as against the other creditors who have been deceived and injured by that action they must remain unsecured creditors, notwithstanding the record of their mortgages for the purpose of obtaining preference.

As early as 1647 our General Court declared the secret conveyance of land upon the ownership of which creditors had relied in obtaining credit, " to be contrary to a righteous rule, that every man should pay his debts with his estate, be it what it will be, either real or personal," which estate if insufficient to pay all creditors, each one shall have a "suitable proportion to his debt." 1 Col. Rec. p. 151.

This rule of righteousness and broad principle of public policy belongs to our common law, and has influenced the course of legislation and judicial decisions in respect to insolvency. So far, however, as it relates to the delusion and injury of creditors through secret conveyance of land, it rests

upon the principle common to all jurisprudence, which imposes upon every man the duty of surrendering, to those justly entitled, property in his legal possession which in equity and good conscience he ought not to retain, and which forbids anyone to assert his rights when in equity and good conscience he ought not to assert them, against one who has been injured and deceived through his conduct in respect to such rights. This principle underlies the statutes against fraudulent conveyances, against preference of creditors with a view to insolvency, the rule of policy limiting the transfer of property without surrendering its possession, the doctrine of equitable estoppel; and influences the determination of many questions of fraud. It applies clearly to the transaction under discussion, as detailed in the finding of facts. Its application in other jurisdictions to conditions more or less similar, is illustrated in the following cases : *Clark* v. *Richards Lumber Co.*, 68 Minn. 282, 288 ; *Bacon* v. *Harris*, 62 Fed. Rep. 99, 102 ; *Montgomery* v. *Phillips*, 53 N. J. Eq. 203, 219 ; *Goll & Frank Co.* v. *Miller*, 87 Ia. 426, 431 ; *Standard Paper Co.* v. *Guenther*, 67 Wis. 101, 106.

The Superior Court is advised to render judgment against the defendants, declaring their mortgage liens to be ineffectual as against the plaintiff, and setting the same aside.

In this opinion the other judges concurred.