## In re HUNT.

### (District Court, N. D. New York. July 22, 1905.)

BANKRUPTCY—PREFERENCES—UNRECORDED MORTGAGE.

Under Bankr. Act July 1, 1898, c. 541, § 60b, 30 Stat. 562 [U. S. Comp. St. 1901, p. 3445] as amended Feb. 5, 1903, c. 487, 32 Stat. 799 [U. S. Comp. St. Supp. 1903, p. 416], which defines a preference, and provides that the four-months period within which a transfer of property of the character defined shall constitute a preference shall not expire until four months after the date of the recording or registering of the transfer "if by law such recording or registering is required," a mortgage of property in New York, which is not required by the laws of the state to be recorded to be valid, except as against subsequent purchasers or mortgagees in good faith, for value, takes effect, for the purpose of computing the four-months period, at once on its execution, without reference to its recording, and, if executed more than four months prior to the bankruptcy of the mortgagor, does not constitute a preference, and creates a valid lien, in the absence of proof that it was withheld from record pursuant to agreement for the purpose of defeating the provisions of the bankruptcy law, or that other persons were thereby induced to extend credit to the mortgagor or forego their legal rights.

Review of an order of referee in bankruptcy allowing and establishing as a secured or preferred debt the claim of the Delaware National Bank of Delhi, N. Y., and directing payment thereof to the extent of $3,900 from the proceeds of the real estate of said bankrupt, John A. Hunt. The trustee insists that for several reasons the mortgage lien on the real estate of the bankrupt is invalid, and not a valid lien thereon as against the trustee in bankruptcy and general creditors, and that the payment of the notes secured to be paid thereby cannot lawfully be directed from such proceeds.

C. L. Andrus, for claimant Delaware National Bank.

Hamilton J. Hewitt, in pro. per. (M. M. Palmer, of counsel).

RAY, District Judge. June 4, 1903, John A. Hunt, the bankrupt, and Sarah J. Hunt, his wife, of Delhi, N. Y., gave a mortgage on all his real estate to the Delaware National Bank, of the same place, reciting an indebtedness to the bank of $5,000 (in fact it was considerably less), "secured to be paid by their [the mortgagors'] certain notes," and "conditioned for the payment of the said sum of five thousand dollars ($5,000) in the aggregate, and any and all renewals thereof with interest. This mortgage is given as security for the payment of all liability or liabilities of the parties of the first part to the said bank, or party of the second part, due or to become due or that may hereafter be contracted." This mortgage was recorded in the clerk's office of the county of Delaware, N. Y., on the 10th day of June, 1904, at 1 o'clock p. m., Liber 88 of Mortgages, page 26. On the 17th day of June, 1904, said John A. Hunt was duly adjudicated a bankrupt on his own petition duly filed that day. The existence of the mortgage from the time of its execution to that of its recording, one year and six days, was known to the mortgagors and the bank and its officers only. It is conceded by the bank that when the mortgage was given, Honeywell, the president of the bank, and who did the business in taking it, and

who took the acknowledgments thereof, asked Hunt if he would not give him a mortgage to secure what he owed the bank; that Hunt consented, requesting that it be not recorded, and asking if it was necessary to record it, and also stating he owed no one else, and that to record the mortgage might or would hurt his credit in New York; and that the president of the bank said in reply he would not be in a hurry about recording it. The president very soon thereafter consulted counsel for the bank, one of the directors, as to the necessity for recording the mortgage, and was advised by such counsel, a director of the bank, it was not necessary, in view of Hunt's statement that his entire indebtedness was represented by obligations in the bank.

The proof of claim sets out seven promissory notes, each made by John A. Hunt, each payable at said bank, and each duly indorsed by the person to whose order same was made payable, and aggregating in amount $4,721. Several of them are indorsed by Hunt's wife, who joined in the mortgage. The claim states that each of these notes was given in renewal of a like note for the same or a greater amount, and held by said bank when the mortgage was given. The proof establishes the truth of this statement to the amount of $3,900 thereof in any event. The real estate mortgaged —and the bankrupt had no other—is worth not to exceed $4,500. At the time the mortgage was given, the said mortgagor, now the bankrupt, owed at least $25,000 in that vicinity and elsewhere, or about $20,000 more than his indebtedness at the bank. This had been his indebtedness to various parties for several years. The personal estate of said Hunt was worth about $3,000, and consisted almost entirely of his stock in a grocery store which he was conducting in Delhi. He had dealt with the bank for several years. The referee finds:

"That his dealing with the bank, creditor, began in 1893, increasing gradually down to the 4th day of June, 1903, at which time he owed the bank $4,150. The money borrowed from the bank was placed to his credit, and checked out in his business, the bank taking notes of the bankrupt, indorsed by his wife, representing the loans. The evidence also discloses that the bankrupt renewed the notes representing his indebtedness to the bank from time to time from five days to ninety days. His account was frequently overdrawn, and checks upon the same were often dishonored and protested by the bank under the same management as at the date of the execution and delivery of the mortgage. That about June 3, 1903, Mr. Honeywell, president of the bank, came to the bankrupt, and asked him if he (bankrupt) and his wife would give the bank a mortgage to secure the amount he had in the bank. The bankrupt replied that he would. There was something said between the bankrupt and the president of the bank about recording the mortgage, but what it was the bankrupt does not appear to be very positive. Mr. Honeywell very positively denies that he agreed not to record the mortgage; the conversation being: 'He asked if it was necessary to record it, and I [Honeywell] said, "I suppose so." When I told him he said he would rather a little it weren't; it would hurt his credit in New York. I told him I wouldn't be in any hurry about it. Q. Did you tell him you wouldn't record it? A. No, sir.'"

The fact remains, however, that the bank did not record it, and in the meantime extensive credit to Hunt was given and extended by other parties. It also appears that on two occasions the president of the bank stated, in substance, to inquirers to whom Hunt owed money, that he owned his real estate clear.

By order of the referee this mortgaged property was sold, and the proceeds of the sale deposited to await the determination of the court as to the validity of the mortgage as a lien in preference to the claim or right of the trustee. In short, is the bank or the trustee entitled to the proceeds? Subdivision "b" of section 60 of the act approved July 1, 1898, c. 541, 30 Stat. 562 [U. S. Comp. St. 1901, p. 3445], entitled "An act to establish a uniform system of bankruptcy throughout the United States," as amended by the act approved February 5, 1903, c. 487, 32 Stat. 799 [U. S. Comp. St. Supp. 1903, p. 416], provides:

"If a bankrupt shall have given a preference and the person receiving it, or to be benefited thereby, or his agent acting therein, shall have had reasonable cause to believe that it was intended thereby to give a preference, it shall be voidable by the trustee, and he may recover the property or its value from such person. And, for the purpose of such recovery, any court of bankruptcy, as hereinbefore defined, and any state court which would have had jurisdiction if bankruptcy had not intervened, shall have concurrent jurisdiction."

If the giving of the mortgage under the circumstances constituted the giving of a preference within the meaning of the act, it is plain that the bank and its agent, Honeywell, the president, not only had reasonable cause to believe, but knew, that a preference was intended; that is, that by giving the mortgage the mortgagor intended to give a security that should result in paying his indebtedness to the bank to the extent of $5,000 from his real estate before paying anything to any other creditor from that property. He intended to prefer the bank. His other property was insufficient by many thousands of dollars to pay his other indebtedness. The evidence also shows that the mortgage was given to secure an extension of his indebtedness to the bank; that is, a renewal of his notes. Of course, after obtaining the mortgage which secured the indebtedness of Hunt, the bank was willing to carry and renew the notes. For four months, at least, it was necessary for the bank to carry them and keep the mortgage secret; that is, unrecorded. If not kept secret, it could have been avoided by the trustee in bankruptcy, provided such proceedings had been instituted. This the bank knew. The fact that officers of this bank went on the bond of Hunt as supervisor of the town is of no consequence. The funds were kept in the bank, and no defalcation of any amount could have occurred. Again, there was no thought that Hunt, even if insolvent, would misappropriate the funds coming into his hands as such officer. The bank and its agent intended to secure and secured this mortgage for the purpose of obtaining a preference in the sense just stated. The transaction shows all this. No other inference logically or honestly can be drawn from the transaction in the light of the surroundings. But, to constitute a voidable preference within the meaning of the bankruptcy act, something more is necessary. Subdivision "a" of the same section (section 60) says, "A person shall be deemed to have given a preference if, being insolvent" (Hunt was insolvent), "he has within four months before the filing of the petition * * * made a transfer of any of his property" (this he has done, for a mortgage is a transfer. See subdivision 25, § 1,

30 Stat. 545 [U. S. Comp. St. 1901, p. 3420]), "and the effect of the enforcement of such * * * transfer" (mortgage) "will be to enable any one of his creditors to obtain a greater percentage of his debt than any other of such creditors of the same class." (This it will do, for there were other creditors of the same class, who will receive nothing if this mortgage prevails.) "Where the preference consists in a transfer" (mortgage) "such period of four months shall not expire until four months after the date of the recording or registering of the transfer, if by law such recording or registering is required." This last sentence was added by the amendment of February 5, 1903. As introduced in the House of Representatives by the author of the amendment, as it was reported from the judiciary committee of the House of Representatives, and as it passed the House, the words "or permitted, or if not, from the date when the beneficiary takes notorious, exclusive or continuous possession of the property transferred," followed the word "required," and ended the sentence. Had the section become a law in this form, the ending of the amendment would have been, "if by law such recording or registering is required or permitted," etc. In such case there would be no contention here on this subject. In this regard it followed subdivision "b," § 3, of the act (30 Stat. 546 [U. S. Comp. St. 1901, p. 3422]). The Senate struck out the words "or permitted," etc., above quoted. Did it regard these words as surplusage? Were they surplusage? This court thinks not. The words, "if by law such recording or registering is required," must mean the same as they would if the words "to make the transfer valid against the person executing it," or "to make the transfer valid as against the general creditors of the person executing it," were added after the word "required." In New York the registering or recording of a mortgage on real estate is not required in order to give it validity as against the mortgagor, or general, or even judgment, creditors; consequently recording is not required to give it validity as against the trustee in bankruptcy. The word "required" does not mean the same as "permitted," or the same as the words "required in any case, or for any purpose." In some states a real estate mortgage must be recorded or registered to be good as against even general creditors. The laws of New York require the recording of such a mortgage as against purchasers and mortgagees in good faith and for value only. Real Property Law, § 241 (Laws 1896, p. 607, c. 547). That section reads:

"Sec. 241. Recording of Conveyances. A conveyance of real property, within the state, on being duly acknowledged by the person executing the same, or proved as required by this chapter, and such acknowledgment or proof duly certified when required by this chapter, may be recorded in the office of the clerk of the county where such real property is situated. Every such conveyance not so recorded is void as against any subsequent purchaser in good faith and for a valuable consideration, from the same vendor, his heirs or devisees, of the same real property or any portion thereof, whose conveyance is first duly recorded."

On the subject of the failure of the amendment of the bankruptcy act as proposed and as it passed the House, Collier on Bankruptcy (5th Ed.) p. 453, says:

"The concluding sentence of subdivision 'a' is new. It was inserted by the amendatory act of 1903. Its purpose is apparent—to meet the decisions that held the date of the delivery of a preferential instrument, rather than the date of its record, the beginning of the four-months period. Its parentage, a similar clause in section 3b, is clear. The Ray bill also contained after 'required' the words 'or permitted, or, if not, from the date when the beneficiary takes notorious, exclusive, or continuous possession of the property ·transferred.' For some reason the Senate struck out these words. The result will prove unfortunate. The concealment of preferences through the four months, and thus the accomplishment of gross frauds on creditors, will be possible, unless the preference is accomplished by an instrument which must be recorded. The evils aimed at by the Ray amendment are but partially eradicated."

The writer of this opinion regrets that such amendment as proposed did not become a part of the act. Secret liens of any character ought not to be tolerated by the act. The date of the beginning of the four-months period referred to ought to be the date of recording or filing the instrument or of taking open possession of the property. However, courts must administer the law as they find it.

Little v. Hardware Co., 13 Am. Bankr. Rep. 422, 133 Fed. 874, is instructive in this connection, but has nothing to do with the crucial question, as in that case there was no pretense of a statute either requiring or permitting the recording of the bill of sale for any purpose. Within the meaning of the act, a preference (by mortgage of real estate), to be avoided by the trustee, must have been given by the (now) bankrupt under the following conditions: (1) The debtor must have been insolvent. (2) The effect of the enforcement of the preference (mortgage in this case) must be to enable any one of the creditors to obtain a greater percentage of his debt than any other of such creditors of the same class. (3) The person receiving such preferences, or his agent acting in receiving it, must have had reasonable cause to believe that it was intended thereby (the giving and receiving of the instrument) to give a preference; that is, in making such transfer by giving the instrument, to enable the creditor receiving it to obtain a greater percentage of his debt than that received by any other of such creditors of the same class. (4) In the state of New York such instrument, if a mortgage of real estate, must have been executed and delivered within the four months immediately preceding the filing of the petition in bankruptcy. It is proper to say that in New York the purpose of recording real estate mortgages is not, and has not been, to give notice to or protect the general creditors, or even judgment creditors, of the mortgagor. As to judgment creditors, even unrecorded mortgages on real estate are valid. In Georgia the rule is somewhat different. There the Code requires a mortgage of real estate to be recorded. Code 1895, § 2724. But, if not recorded, it is held good as against the mortgagor (and consequently is good as against the trustee in bankruptcy), but not as against judgment creditors. In such case section 67, subds. "a" and "b," 30 Stat. 564 [U. S. Comp. St. 1901, p. 3449], will apply. If creditors obtain judgment, and bankruptcy intervenes, the trustee may assert the nonrecord, etc., for the benefit of the estate. As to the laws of that state, see Clayton v. Exchange Bank, 121 Fed. 630, 57 C. C. A. 656.

A trustee in bankruptcy is not a purchaser in good faith, nor does he occupy the position of such a purchaser. He takes the property of the bankrupt in cases not affected by fraud in the same plight and condition the bankrupt held it as of the date of the adjudication, and subject to all equities impressed on it in the hands of the bankrupt, except in cases where there has been some conveyance or incumbrance void as against the trustee, made so by some positive enactment of the bankruptcy law. In re Garcewich, 115 Fed. 87–89, 53 C. C. A. 510, approved Thompson v. Fairbanks, 196 U. S. 526, 25 Sup. Ct. 306, 49 L. Ed. 577. He takes the title the bankrupt then had; no more, no less. Section 70, subd. "a," 30 Stat. 565 [U. S. Comp. St. 1901, p. 3451]. He takes title to such property charged with all liens and equities valid against the bankrupt, unless, as just stated, they are made void or voidable by some positive provision of the act. Same cases. But in some cases liens may be avoided by the trustee that could not have been avoided by the bankrupt if the bankruptcy proceedings had not intervened. In New York Economical Printing Company, 110 Fed. 514, 49 C. C. A. 133, the court said:

"The bankrupt act does not vest the trustee with any better right or title to the bankrupt's property than belongs to the bankrupt or to his creditors at the time when the trustee's title accrues. The present act, like all preceding bankrupt acts, contemplates that a lien good at that time as against the debtor and as against all of his creditors shall remain undisturbed. If it is one which has been obtained in contravention of some provision of the act, which is fraudulent as to creditors, or invalid as to creditors for want of record, it is invalid as to the trustee."

In Hewit v. Berlin Machine Works, 194 U. S., at page 302, 303, 24 Sup. Ct. 690, 48 L. Ed. 986, the Supreme Court quote this language, and say:

"We concur in this view, which is sustained by decisions under previous bankruptcy laws [citing cases], and is not shaken by a different result in cases arising in states by whose laws conditional sales are void as against creditors."

Care is not always taken to distinguish those cases where a lien is actually created or given by an agreement in writing from those where a lien is agreed to be given or created in the future. An agreement to give a lien is one thing—an agreement to create a lien merely. A writing given creating a lien as a mortgage on real estate described therein is a lien actually created and existing from the execution of the instrument, and quite a different thing from the agreement to give it. All logical minds must see and concede that an agreement to make a transfer of property is not the making of a transfer. Sometimes, in equity, that is regarded as done which ought to be done and is agreed to be done; but this rule is not applied to defeat the bankruptcy act, and hence an agreement to make a transfer is not held to be a transfer, but the transfer is held to be made when it is in fact made, although long before agreed to be made.

In Mathews, as Trustee in Bankruptcy, v. Hardt et al., 79 App. Div. 570, 80 N. Y. Supp. 462; Id., 9 Am. Bankr. Rep. 373, 80 N. Y. Supp. 462, we have nothing but an agreement to give a lien on per-

sonal property or rights of action of all descriptions, some not then in existence. The court itself describes the agreement, viz. (page 574 of 79 App. Div., page 465 of 80 N. Y. Supp.):

"We think the parties themselves properly designated it as an agreement to give a lien on the property of the corporation, which conferred upon the defendant firm the right to enforce such lien when and after they had made the advances to the extent stipulated, and upon the refusal of the corporation to repay such advances."

Again (at page 577 of 79 App. Div., page 467 of 80 N. Y. Supp.):

"Fairly construed, the agreement was that the firm was to make the advances to enable the corporation to go on in its business, and that at any time in the future, when the firm had advanced the amount stipulated, they were entitled, upon the failure of the corporation to pay back such advances, to have a lien for such advances upon the then property of the corporation."

The court then says (page 579 of 79 App. Div., page 468 of 80 N. Y. Supp.):

"The crucial factor, therefore, is whether a preference was given 'within four months,' and this in turn depends upon our conclusion as to whether the transaction is to be treated as of the date when the agreement for the lien was given, or is to be considered as of the date when possession was taken. In other words, the question is, did the delivery of the possession to the defendants and their taking possession within four months of bankruptcy constitute a preference within the meaning of the bankruptcy act of 1898?"

In Wilson v. Nelson, 183 U. S. 191, 22 Sup. Ct. 74, 46 L. Ed. 147, there was, in effect, a power of attorney to give or confess a judgment made more than four months prior to the filing of the petition in bankruptcy, but the judgment was given or confessed within that period. Held voidable as a preference. In Matter of Sheridan (D. C.) 98 Fed. 406, there was an agreement executed to pledge personal property as security for a debt before the four-months period, but no actual pledge was made either by delivery or by a writing. In Matter of Fanny Mandel, 10 Am. Bankr. Rep. 774, 127 Fed. 863, the agreement made is stated at pages 775 and 776, of 10 Am. Bankr. Rep., page 864 of 127 Fed., as follows:

"On the opening of the account with the Jefferson Bank an agreement was made between the bankrupt, acting by her said attorney, and the bank, whereby the bankrupt agreed that the bank should have a lien upon any surplus of the deposit account, and upon all property of the bankrupt left with the bank as security or otherwise, and upon all collateral to any loan or otherwise, which collateral should also be held for any other liability to the bank, whether then existing or thereafter contracted."

The account was opened in February, 1902, when a number of accounts were transferred to the bank, and a credit and advance of 70 per cent. made to the bankrupt. The last transaction of this description under this agreement was September 26, 1902, when 37 accounts were assigned to the bank (pursuant to said agreement), aggregating $2,657.43, on which the bank advanced $1,000 only. It then held two notes of the bankrupt, one of $600 and one of $700. October 15, 1902, a petition in bankruptcy was filed, and an adjudication made. The transaction of September 26th was assailed as a preference so far as the bank sought to hold the proceeds of the accounts and apply them on the notes. The transfer was made

and the preference given on that day, September 26th, of course, for it was on that day the accounts were assigned. All these were agreements to make transfers. But a real estate mortgage is the present transfer of an estate in the land and declared by subdivision 25 of section 1 of the act itself to be a transfer.

Attention is called to Tatman v. Humphrey, 184 Mass. 361, 68 N. E. 844, 63 L. R. A. 738, 100 Am. St. Rep. 562, 12 Am. Bankr. Rep. 62. That case has been reversed by the Supreme Court of the United States (Humphrey v. Tatman, 14 Am. Bankr. Rep. 74), the court holding the mortgage was good as against the trustee.

The trustee insists that the facts of this case bring it within the principles declared in Blennerhassett v. Sherman, 105 U. S. 100, 26 L. Ed. 1080. It was there held:

"A mortgage of his entire estate, executed by an insolvent mortgagor to a creditor, who knows of his insolvency, and who, for the purpose of giving him a fictitious credit, actively conceals the mortgage, withholds it from record, and represents him as having a large estate and unlimited credit, by which means he is enabled to contract other debts which he cannot pay, is void at common law. A mortgage executed by an insolvent with intent to give a preference to a creditor who has reasonable cause to believe him to be insolvent, and knows that it is made in fraud of the provisions of the bankrupt act, and who, for the purpose of evading them, actively conceals it and withholds it from record for two months, is void, although executed more than two months before the filing of a petition in bankruptcy by or against the mortgagor."

There can be no doubt that there was an agreement between Hunt, the mortgagor, and Honeywell, the president of the bank, at the time the mortgage was given, and as a part of the transaction, that the bank would not put the mortgage on record at that time, and that Hunt would not put a mortgage on the premises to some other person ahead of the one given the bank. Honeywell also concedes that Hunt was given to understand by him that, if the mortgage was not given, the notes held by the bank would not be renewed. There is no doubt that there was also an understanding between Hunt and Honeywell at some time that the mortgage must have been executed and delivered over four months prior to bankruptcy proceedings in order to be good as against general creditors. But the evidence would tend strongly to show that this understanding was arrived at about May, 1904, not in June, 1903. The evidence does not show that there was any agreement to keep the mortgage from record for any definite period of time, or for at least four months. The evidence also shows that about April or May, 1904, Mr. Honeywell, when asked as to the financial responsibility of Mr. Hunt, said, in substance, they (meaning the bank) regarded him (Hunt) as solvent; that he had his real estate with nothing against it more than the amount of the bank's indebtedness, and his stock of goods and accounts would more than offset his other indebtedness. It does not appear that Honeywell knew, even approximately, the indebtedness of Hunt. It also appears that shortly before filing his petition in bankruptcy Hunt made incorrect and untruthful statements regarding his indebtedness to some of his numerous creditors. It is undoubtedly true

that Honeywell, along in the spring of 1904, but more than six months after the execution and delivery of the mortgage, failed to disclose that the bank held the mortgage when inquiry was made as to the standing and financial responsibility of Hunt; but it is not shown that Honeywell had authority to make such concealment of the fact, or that he actively concealed the existence of the mortgage, or that Honeywell's acts and declarations, whatever they were, influenced any person to give or extend credit to Hunt.    In short, it is not made to appear that the nonfiling of the mortgage either induced any person to give credit to Hunt or forbear suit or bankruptcy proceedings.    If the evidence established that Honeywell, president of the bank, mortgagee, kept secret and withheld the mortgage from record for the purpose of allowing the four months to run so as to defeat the provisions of the bankruptcy act relating to preferences, and intended so to do when he took it, this court would hold that such acts were in fraud of the act, and rendered the mortgage void.    Blennerhassett v. Sherman, 105 U. S. 100, 26 L. Ed. 1080; Clayton v. Exchange Bank of Macon, 121 Fed. 630, 57 C. C. A. 656; Curtis, Receiver, v. Lewis et al., 74 Conn. 367, 50 Atl. 878; Hildreth v. Sands, 2 Johns. Ch. 35.    But while the court may have its suspicions that such was the fact, it is not therefore at liberty to so find or hold, even if those suspicions are justified by and grow out of the evidence.    Fraud must be proved.    It may be inferred from facts established by competent proof, but the inference of fraud cannot legally be drawn and is not justifiable when the inference of innocence is just as consistent with the facts. I cannot find from this evidence that the failure to record the mortgage was accompanied by such acts on the part of the mortgagee or of its agents that a fictitious credit was given to Hunt, now the bankrupt, or that the acts of the defendant induced any creditor to forego any right.    The defendant is not estopped from asserting the mortgage.

The order of the referee is affirmed.