WILLIAM H. UNMACK, RECEIVER, vs. JOHN W. DOUGLASS.

WILLIAM H. UNMACK, RECEIVER, vs. JOHN W. DOUGLASS
ET AL. (KILLAM CARRIAGE COMPANY).

Third Judicial District, Bridgeport, April Term, 1903.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, Js.

A purchase of property in good faith and for a present, fair consider-
ation, is not voidable, either under the Bankrupt Act of 1898
or the insolvency law of this State.
The assumption of a debt of the vendor, through a novation, is a valu-
able consideration.
A bankrupt has the right to sell on credit, as well as for cash, to a *bona
fide* purchaser.
The District Court of the United States may invest a receiver in bank-
ruptcy with the right to sue for the recovery of assets wrongfully
transferred by the bankrupt.
If unsuccessful in a duly-authorized action of replevin to recover such
alleged assets, brought in a State court, judgment goes on the
replevin bond for damages and costs, against both principal and
surety.

Argued April 21st—decided June 4th, 1903.

ACTIONS of replevin by a receiver in bankruptcy for cer-
tain horses and carriages, brought to the Court of Common
Pleas in New Haven County and tried to the court, *Cable, J.;*
judgment for defendant in each case, and appeal by the plain-
tiff. *No error.*

*James M. Sullivan,* for the appellant (plaintiff).

*Charles S. Hamilton,* for the appellees (defendants).

BALDWIN, J. These two actions turn upon the same
questions of law and may be conveniently considered to-
gether.

Galwey, the bankrupt, was a livery-stable keeper. A few
weeks before the commencement of the bankruptcy proceed-
ings, Douglass agreed to enter into partnership with him in
his business, provided the former, after full investigation of

its condition and prospects, became satisfied therewith; he meanwhile assisting in the business on wages of $2 a day, and allowing property of his own to be used in connection with it, for the resulting depreciation of which he was to receive $100 more, and the absolute title to which he was to retain.

While working for Galwey under this agreement, Douglass bought of him for $400, which was their fair market value, a hack and pair of horses then in the possession of certain creditors having liens upon them. Of this $400, he paid $72 to discharge the liens, and the rest later to other creditors of Galwey, including $42 due to himself for his wages. On payment of the $72, Galwey gave him an absolute bill of sale of the hack and horses, reciting the receipt of a consideration of $400. At this time Galwey owed the defendant $12 only, for wages; but possession was delivered and openly and continuously thereafter retained by the defendant.

Three days before the bill of sale was given, Douglass had bought of Galwey his interest in three carriages under a so-called lease from the Henry Killam Company, dated in October, 1898. By this lease Galwey had agreed to pay a monthly rental of $60 for twenty-one months, and should he do so, might buy the carriages for $1 within a week from the date of the last payment. Galwey had not made the full payments thus required, and owed the company $432 on that account. Douglass agreed, as the consideration of his purchase, to pay $100 of this sum to it, provided it would accept him as its debtor in place of Galwey, for the balance. To this it consented, on receiving from him the $100, and thereupon Galwey gave him a bill of sale of his interest in the carriages for an expressed consideration of " one dollar and other valuable considerations," and he took them openly into his possession, keeping them till about the time of the bankruptcy, when they were turned over to the possession of the company. The fair cash market value of the carriages was $432, and after his payment of $100 Douglass paid the company $80 more on account, to take up notes of Galwey which it held for that amount.

Both these sales to Douglass were on his part made in good faith, without any purpose to defraud Galwey's creditors ; and so far as he knew the same was true of Galwey ; nor when they were made did Douglass know or believe, or have reasonable cause for knowing or believing, that Galwey was in failing circumstances, or liable to become insolvent or bankrupt.

The paper under which Galwey derived his title from the Henry Killam Company was in substance a conditional sale, and, never having been acknowledged or recorded, was, as to his creditors and the plaintiff, an absolute sale. General Statutes, Rev. 1902, §§ 4864, 4865; *In re Wilcox & Howe Co.*, 70 Conn. 220.

The Bankrupt Act of 1898 (§ 67) provides that all transfers of property made by a person thereafter adjudged a bankrupt, and within four months prior to the commencement of the bankruptcy proceedings, with the intent on his part to hinder, delay or defraud his creditors, or any of them, shall be null and void as against them, and such property shall remain part of the assets of the estate and pass as such to the trustee in bankruptcy, except as to purchasers in good faith and for a present fair consideration. Transfers made within such period, which would be voidable by creditors under the laws of the State in which the property transferred is situated, are likewise voidable by the trustee in bankruptcy. The plaintiff, as a receiver in bankruptcy, had (§ 2), under the order of the District Court, the right of action thus created for the recovery of assets so wrongfully transferred.

The facts found by the trial court show that neither of the transfers to Douglass was voidable by creditors under the laws of this State. If Galwey had any fraudulent intent, it was not known to nor participated in by Douglass. *Partelo* v. *Harris*, 26 Conn. 480. Nor were either of them voidable for any cause specified in the Bankrupt Act; since Douglass purchased in good faith and for a full and valuable consideration. What was done and agreed between him, the Henry Killam Company, and the bankrupt, extinguished, by

a novation, the latter's obligation to the company, and had the same effect, as respects the plaintiff, as if Galwey had received $432 from Douglass and paid it over to the company. Nor is the fact material that the expressed consideration of the bill of sale of the hack and horses was the receipt of $400, although only $84 at most had been in fact paid over at its date. The sum named was the true consideration. A bankrupt has the right to sell on credit, as well as for cash, to a *bona fide* purchaser.

That possession of the property sold was not retained by the bankrupt is settled by the finding.

It is contended that there is error in the judgments because they award damages and costs against the plaintiff as a receiver in bankruptcy. He sought his remedy in a court of this State, and by actions in which it was necessary to give recognizances with surety for the return of the property replevied and for damages and costs in case he should fail to establish his right to retain the possession gained under the writ. Into such a recognizance—a joint and several one—he entered, and he and his surety must abide by its terms. It constituted an obligation of record, voluntarily assumed, which must necessarily have been contemplated by the District Court when it gave him permission to bring these actions. It is unnecessary to inquire whether it binds the plaintiff personally. It certainly binds his surety personally, and in order to bind the surety it was necessary that the judgments in question should be rendered against his principal and in the capacity in which he sued.

There is no error in either judgment.

In this opinion the other judges concurred.