## Laura Lee Armstrong *vs.* The Greenwich Motors Corporation.

Maltbie, C. J., Haines, Hinman, Banks and Avery, Js.

Argued February 10th—decided April 11th, 1933.

*Arthur B. Weiss,* with whom, on the brief, was *Frederick E. Morgan,* for the appellant (Connecticut Credit Corporation).

*George N. Foster,* for the appellee (the receiver).

BANKS, J. A receiver of The Greenwich Motors Corporation was appointed December 1st, 1930. There came into his possession two automobiles, a Chrysler sedan and a Chrysler coupé, title to, or an interest in, both of which is claimed by the Connecticut Credit Corporation as the result of certain so-called financing operations between it and the Motors Corporation. The facts affecting the title to the two automobiles are not the same, and present two distinct questions of law upon this appeal.

1. On October 17th, 1930, The Greenwich Motors Corporation executed a conditional sales contract of the Chrysler sedan, which was then in its possession, to Oswald Lee, which provided that the title should remain in it until the car was fully paid for. On the same day, by an instrument which was a part of the conditional bill of sale to Lee, the Motors Corporation

assigned its interest in the sales contract to the Connecticut Credit Corporation, and received in payment a draft of $900. Lee was an employee of the Motors Corporation. He did not turn over to it an automobile mentioned in the contract as the down payment for the sedan, and the latter remained in the possession of the Motors Corporation. Lee never intended in fact to purchase the sedan, and neither party intended to effect a sale, it being understood between them that the purpose of the transaction was merely to enable the Motors Corporation to raise money by assigning the contract to the Credit Corporation. The Credit Corporation knew that Lee was an employee of the Motors Corporation and that the sedan remained in the latter's possession. It had purchased on previous occasions similar contracts between the Motors Corporation and one of its employees, and knew of the nature and purpose of the transaction.

The result of this transaction was that the Credit Corporation claimed title to, or a lien upon, an automobile in the possession of the Motors Corporation, as security for a loan to the latter of $900. Lee was a purely nominal party to the transaction. He never took possession of the car and acquired no interest in it. What was actually done was that the Motors Corporation borrowed $900 from the Credit Corporation upon the security of the car. The transaction undoubtedly took the shape it did in an attempt to avoid the effect of the rule that retention of possession by a mortgagor of personal property makes the mortgage invalid as to attaching creditors and bona fide purchasers. The character of the transaction was not changed by the devious course adopted by the parties. It was in effect a chattel mortgage of the car by the Motors Corporation to the Credit Corporation with retention of possession by the former. It was invalid

as against attaching creditors of the Motors Corporation. *Adler* v. *Ammerman Furniture Co.,* 100 Conn. 223, 123 Atl. 268. It was therefore invalid as against the receiver, who succeeds to all the rights of the creditors of the Motors Corporation. *In re Wilcox and Howe Co.,* 70 Conn. 220, 39 Atl. 163. Even if the purported conditional sale of the car by the Motors Corporation to Lee were held to be an actual sale made in good faith, the result would be the same. In that event the transaction, as between the parties thereto, would have effected a transfer to Lee of an interest in the car as conditional vendee, with title retained by the Motors Corporation until the purchase price was paid in full, and a transfer to the Credit Corporation of the title of the Motors Corporation as conditional vendor, both of which transfers would have been invalid as against the receiver of the Motors Corporation because of the retention of possession of the car by the latter. *Cohen* v. *Schneider,* 70 Conn. 505, 510, 40 Atl. 455; *Spencer* v. *Broughton,* 77 Conn. 38, 41, 58 Atl. 236.

The court did not err in its conclusion that the receiver's right to possession of the Chrysler sedan was superior to that of the Connecticut Credit Corporation.

2. The Greenwich Motors Corporation was the Greenwich dealer for the Chrysler car, its distributor from whom it procured its new cars being The Standard Motors Corporation of Bridgeport. On October 24th, 1930, The Standard Motors Corporation owned and had in its possession four Chrysler cars, including a convertible coupé the title to which is here in question. On that date, in pursuance of an arrangement between the Greenwich Motors Corporation and the Connecticut Credit Corporation for financing the purchase of these cars, the Credit Corporation made its

check to the order of The Standard Motors Corporation in payment for them, and received receipted bills for them. The Standard Motors Corporations then delivered the cars to an official of The Greenwich Motors Corporation who then executed a "trust receipt" which was filed in the office of the town clerk of Greenwich on October 25th, 1930. The trust receipt recited that The Greenwich Motors Corporation had received from The Standard Motors Corporation, acting as agent for The Connecticut Credit Corporation, the cars therein described, which it agreed to hold in trust for the latter as its property, and to return them to it on demand. It provided that the Motors Corporation should not "lend, rent, mortgage, pledge, encumber, operate, use or demonstrate" the cars, but that it might sell them "for cash for not less than the sum or sums mentioned in the 'wholesale storage' record of such cars," and that immediately after such sale it should deliver the proceeds thereof to the Credit Corporation. It also provided that if the Motors Corporation failed to sell the cars or to pay a note given by it to cover the amount advanced by the Credit Corporation, the latter might retain any sum paid to it by the former. It further provided that the Credit Corporation should insure the cars against fire and theft while they were held by the Motors Corporation. The trial court held that this instrument was a chattel mortgage, that the Credit Corporation, never having had possession of the car, did not acquire title to it through the trust receipt, and that the receiver had a superior right of possession.

The transaction here involved is one of a type, originally employed in the importing trade for the purpose of securing banks which accepted drafts against bills of lading for the purchase price of merchandise imported, which has come into quite general use in the

marketing of automobiles, where the purchase of cars by the dealer from the manufacturer or distributor is "financed" by a corporation which advances in whole or in part the purchase price, takes title to the cars, and upon their delivery to the dealer takes from him a so-called "trust receipt" in the nature of the instrument above described. The trust receipt has been variously defined as a chattel mortgage, a conditional sale, and a bailment. Some courts have not attempted to state in common-law terms the precise relation created by it, and have treated it as a type of security device not falling within any of the established categories. It possesses some of the attributes of a chattel mortgage in that the title of the holder of the receipt is not in all respects an absolute one, but is held as security for the payment of the purchase price of the merchandise receipted for. The distinction between the two lies in the fact that, in the case of a chattel mortgage, the title or lien passes directly from the debtor to the mortgagee, while in the case of a true trust receipt it passes from the seller to the lender as security for the debt of a third person, the receiptor. The latter has never had either possession or title prior to the giving of the trust receipt, and no creditor is in a position where he can suffer injury by the retention of possession of the property after the creation of an interest in it in some third party. In most jurisdictions chattel mortgages are held to be valid as against creditors and bona fide purchasers without change of possession, but only in case they are recorded in compliance with statutory provisions so requiring. In such jurisdictions the courts have generally upheld the title of banks, which have accepted drafts against bills of lading, based upon unrecorded trust receipts taken from an importer, as against the latter's creditors, receivers or trustees in bankruptcy. See cases

collected in comprehensive annotations in 25 A. L. R. 332; 49 A. L. R. 282; also articles in 22 Columbia Law Review, 395, 546; 29 Columbia Law Review, 545, 556; 15 Cornell Law Quarterly, 543.

The legal relationship, and the resulting rights of the parties, are the same in a domestic transaction involving the financing by a credit corporation of the purchase of automobiles. *In re James, Inc.*, 30 Fed. (2d) 555 (C.C.A. 2d Cir.) and cases in the A. L. R. annotations cited above. In a few jurisdictions recording acts have been held broad enough to require the recording of a trust receipt as well as a chattel mortgage. In this jurisdiction the retention of possession of personal property by a mortgagor makes the mortgage invalid as against attaching creditors and bona fide purchasers, except in the case of certain articles which the statute (General Statutes, § 5092) authorizes the mortgagor to retain in his possession provided the mortgage is recorded. If the trust receipt in this case was a chattel mortgage, there was no obligation on the parties to it to have it recorded, but, recorded or not, it would not be valid as against attaching creditors of the Motors Corporation or its receiver if the title and possession of the Chrysler coupé were in the Motors Corporation prior to the execution of the trust receipt. In that case the transaction would be a chattel mortgage with retention of possession by the mortgagor, and therefore void as against the receiver. *Adler* v. *Ammerman Furniture Co., supra*. But the Greenwich Motors Corporation had acquired neither title nor possession of the car prior to the giving of the trust receipt. The trial court was in error in holding that because the Credit Corporation never had possession of the car it never acquired title to it. It was the apparent intention of the parties that title to the car should vest in the Credit

Corporation upon its payment of the purchase price and receipt of the receipted bill for the same, and the property then passed to it. General Statutes, § 4638. That there was no change of possession from the Standard Motors Corporation to the Credit Corporation is of no present legal significance. There is no question here involving the rights of creditors of The Standard Motors Corporation. Title having passed to the Credit Corporation, and the car remaining in the possession of The Standard Motors Corporation, the latter, acting as the agent of the Credit Corporation, delivered it to The Greenwich Motors Corporation upon the execution by the latter of the trust receipt. No draft or bill of lading was involved as the delivery was from hand to hand. There was no retention of possession by the Greenwich Motors Corporation of property previously owned by it with resulting deception of its creditors, since the car did not come into its possession until after it had executed and delivered the trust receipt.

In the *New Haven Wire Co. Cases*, 57 Conn. 352, 18 Atl. 266, the Wire Company bought iron rods in Germany to be converted into wire at its factory. Certain banks advanced credit to its agents in England by the use of which the latter purchased and paid for the rods. The bills of lading and invoices were taken in the names of the banks which advanced the funds, to whom the Wire Company gave trust receipts, reciting that it held the rods in trust as the property of the banks and as security for the payment of the amounts advanced by the latter to cover the purchase price of the rods. The court held that, though the rods were purchased at the request and for the use of the Wire Company and never came into the physical possession of the banks, the latter became the owners of the rods, that the transaction was in effect a conditional sale

to the Wire Company, and it upheld the title of the banks to the rods as against the receiver of the Wire Company. The trust receipts were not recorded but, in the absence, at that time, of any statutory requirement for the recording of conditional bills of sale, the title of a conditional vendor was held to be good as against creditors of the conditional vendee who attached the property while in the latter's possession. *Mack* v. *Story*, 57 Conn. 407, 18 Atl. 707. In the *New Haven Wire Co. Cases* it was contemplated that the Wire Company, upon payment of the advances made by the banks, would obtain title to the rods, which were purchased by it to be manufactured into wire, and the transaction bore the distinguishing characteristics of a conditional sale. The present transaction resembles more nearly the ordinary consignment of merchandise for sale by the consignee. The trust receipt contains no express provision for the vesting of the title to the cars in the receiptor, though it apparently contemplates such vesting if the note should be paid while the cars are still in its possession. It does provide that the Credit Corporation may take possession of them at any time, without reference to any payments it may have received. It provides that the Motors Corporation may sell them for cash for not less than a fixed price, and immediately account to the Credit Corporation for the proceeds, which until such accounting shall be held by it in trust separate from its own funds. There is little to distinguish this arrangement from that of a consignment. *Hamilton National Bank* v. *McCallum*, 58 Fed. (2d) 912 (C.C.A. 6th Cir.). It is unnecessary, for the determination of this case, to define the transaction as either a conditional sale or a consignment. If the former, it was acknowledged and recorded in compliance with the statute providing that conditional sales of personal

property, with the exception of certain articles named therein, not made in conformity therewith should be held to be absolute sales except as between vendor and vendee and their personal representatives. General Statutes, §§ 4697, 4699. If the latter, the transaction was a bailment, and the cars were not subject to attachment by the creditors of the Motors Corporation, the bailee. *Harris* v. *Coe,* 71 Conn. 157, 41 Atl. 552. In either case, the title of the Credit Corporation was superior to that of the receiver.

There is no error in the decision as to the title to the Chrysler sedan. There is error in the decision as to the title to the Chrysler coupé, and the cause is remanded to the Superior Court with. direction to enter judgment as regards that automobile in favor of the claimant.

In this opinion the other judges concurred.