## PREMIUM COMMERCIAL CORPORATION *v.* GABRIEL KASPRZYCKI ET ALS.

MALTBIE, C. J., JENNINGS, ELLS, DICKENSON and INGLIS, Js.

Argued October 6—decided December 7, 1942.

*Joseph B. Morse*, with whom, on the brief, was *Nelson Harris*, for the appellants (defendants).

*Harold J. Eisenberg*, for the appellee (plaintiff).

INGLIS, J.   The named defendant was a deputy sheriff.   As such, on July 27, 1940, and July 31, 1940, he attached two Studebaker trucks as the property of Louis Neveloff in actions brought against Neveloff by the other defendants in this action.   The trucks had been sold to Neveloff on March 8, 1940, by Carl Florio, doing business as Carl's Commercial Garage, on conditional sale.   The conditional sale contract referred to Carl's Commercial Garage as the "seller" and recited that the down payment on the purchase price was $1000, leaving a balance of $3,603.81 which was to be paid in seventeen monthly payments of approximately $200 each; it stipulated that "It is agreed that the title to said merchandise is to remain in you [Florio] or your assigns, until all amounts due hereunder are paid in cash and that thereupon title is to pass to the undersigned"; and it contained usual provisions including one that if the purchaser made default in any of his payments or sold the trucks or if they were attached then the seller might demand payment of the balance due and, if that were not paid, might repossess the trucks.   The conditional bill of sale was signed by both parties and acknowledged by Neveloff.   At the time of its execution the bodies of the trucks had not been placed upon the chassis, but Florio immediately ordered the bodies and installed

them upon their arrival, and the trucks were then delivered to Neveloff.

On March 8, 1940, Carl's Commercial Garage executed an assignment of the conditional sale contract to the plaintiff; the contract and assignment were delivered to the plaintiff on March 17th and filed in the office of the town clerk in New Haven on March 25th. As additional security the plaintiff took from Neveloff an assignment by him of prospective earnings from the use of the trucks at the rate of $50 per week, directed to the National Carloading Company. As a result of that assignment the plaintiff received a total of $400 but received no other payments from Neveloff. Accordingly, at the time of the attachment, Neveloff was in default in his payments under the conditional sale contract.

A representative of the plaintiff was present at the execution of the conditional sale contract, supplied to Florio information as to the amount of finance and insurance charges which were to be included in the sales price and supervised the preparation, execution and acknowledgment of the contract and the assignment of it by Florio to the plaintiff.

The only contention pressed by the defendants on this appeal is that the trial court erred in concluding that the conditional sale contract complied with the provision of § 4697 of the General Statutes to the effect that the contract shall contain all of the conditions of the sale. Specifically, the claim is that the contract did not accurately set forth the conditions of the sale in that it referred to Carl's Commercial Garage as the seller and provided that title should remain in it, whereas, it is claimed, it was in reality the plaintiff who was the seller and in whom the title was at the time of the sale. The basis of this claim lies in the fact that at the time of the conditional sale the plain-

tiff held a trust receipt given to it by Florio for the trucks. The detailed facts relating to the trust receipt transaction are as follows:

The chassis of the trucks in question had been delivered to Florio directly from the factory on March 5, 1940. At about that time, in order to secure a note for $2500, Florio executed a trust receipt in favor of the plaintiff. In that trust receipt, Florio acknowledged receipt from the plaintiff of the two trucks and agreed to hold them in trust for the plaintiff and, if they were sold, to hold the proceeds of the sale in trust for the plaintiff. It was agreed that Florio should have the privilege of exhibiting the trucks, presumably for sale, and of selling them with the written consent of the plaintiff. It was further agreed that the trust receipt should be construed under the laws of the state of Connecticut.

Up to the time that the conditional sale contract was signed, this trust receipt was in effect. However, as has been stated, the plaintiff's representative was present at the time the conditional sale contract was signed by Florio and Neveloff, in order to attend to the financing of the sale. It does not appear that he said anything to Neveloff about the trust receipt or that Neveloff had knowledge from any source of the trust receipt transaction or in particular of the fact that the trust receipt contained a purported restriction on Florio's right to sell the trucks. Immediately upon the assignment of the conditional sale contract to it, the plaintiff credited sufficient of the proceeds thereof to pay Florio's note of $2500 secured by the trust receipt and sent to Florio the receipted note and the balance of the consideration which was to be paid by the plaintiff for the assignment. It is apparent that the execution of the conditional sale contract, the assignment thereof to the plaintiff, the cancellation of

the note and the resultant release of the trust receipt all constituted a single transaction and it was so intended by the parties.

As is said in *Commercial Credit Corporation* v. *Carlson,* 114 Conn. 514, 516, 159 Atl. 352, "The purpose of our statute requiring conditional sale contracts to be in writing, acknowledged and recorded, is to protect those who, from the fact of possession and apparent ownership by the vendee, may be led to believe him to be the actual owner of property held by him under such contract, and the recording of the instrument is constructive notice to all the world of its contents, and therefore of the facts as to the true ownership of the property in the possession of the conditional vendee." Likewise, the purpose of the requirement that the written conditional sale contract shall set forth "all conditions of such sale" is to apprise those who purpose to do business with the conditional vendee with reference to the personal property sold of just what his interest in that property is. In particular, § 5721 of the General Statutes provides that a creditor of the conditional vendee who attaches his interest shall have the same rights as the vendee to tender to the vendor the performance of the contract. Such an attaching creditor ought to be in a position where he can ascertain what will be required of him by way of performance of the conditional vendee's obligations under the contract. It is obviously an intent of the statute to place him in that position. Therefore, situations might arise in which compliance with the statute would require that the written contract relating to the conditional sale of goods should set forth that the goods were held by the conditional vendor subject to a trust receipt in favor of another if such were the fact.

This is not, however, the situation in the present case. Although it is not specifically stated in the find-

ing that the conditional sale was one in the ordinary course of trade, the subordinate facts found clearly indicate that it was. *Colonial Finance Co., Inc.* v. *DeBenigno,* 125 Conn. 626, 630, 7 Atl. (2d) 841. The plaintiff, the entruster in the trust receipt, by permitting Florio, the trustee, to exhibit the trucks for sale had given him liberty of sale. General Statutes, Cum. Sup. 1939, § 1274e I 2 (c). Subsection I 2 (a) (1) and (2) of § 1274e provides that when a trustee has such liberty of sale and a sale is made in the ordinary course of trade the purchaser at such sale shall take free of the entruster's security interest in the goods sold and no limitation placed by the entruster on the liberty of sale granted to the trustee shall affect such a buyer unless that limitation is actually known to him. Accordingly, in this case, Neveloff having no knowledge of any limitation contained in the trust receipt on Florio's liberty of sale, it is clear that he took free of the security interest in the trucks held by the plaintiff and anyone who dealt with him with reference to the trucks would likewise take free of that security interest.

For this reason, therefore, the existence of the trust receipt did not affect the conditional sale contract in this case. Anyone who acquired Neveloff's rights under that conditional sale contract whether by attachment or otherwise would take the trucks free of any security interest of the plaintiff. The existence of the trust receipt was in no sense a condition of the conditional sale. Certainly neither the spirit of the conditional sale statute nor its purpose required that the conditional sale contract set forth that the trucks were held by Florio subject to a trust receipt.

As has been stated, the defendants claim that the conditional sale contract failed to comply with General Statutes, § 4697, in two specific particulars. The first

is that it referred to Carl's Commercial Garage as the "seller." As has just been pointed out, the trust receipt under the Trust Receipts Act gave to Florio doing business as Carl's Commercial Garage the power, so far as Neveloff was concerned, to sell the trucks. As a matter of fact he was the one who did sell the trucks to Neveloff. Accordingly, it was in no way misleading to refer to Carl's Commercial Garage as the seller in the conditional sale contract. Indeed, it was an accurate statement of that condition of the sale.

The second criticism of the conditional sale contract is that it provides that title to the trucks shall remain in the seller. The claim is that, by virtue of the trust receipt transaction, at the time the conditional sale was made, title to the trucks was in the plaintiff and not in Carl's Commercial Garage, and that, therefore, when the conditional sale contract provided that title should remain in Carl's Commercial Garage it did not accurately state one of the conditions of the sale. The question on this point is whether at the time of the conditional sale title to the trucks was in the plaintiff by virtue of the trust receipt transaction.

It is true that we have said that in a trust receipt transaction at common law the entruster does have a qualified title. *New Haven Wire Co. Cases*, 57 Conn. 352, 18 Atl. 266; *Armstrong* v. *Greenwich Motors Corporation*, 116 Conn. 487, 165 Atl. 598. In the Armstrong case at page 492 it is said that "the title of the holder of the receipt is not in all respects an absolute one, but is held as security for the payment of the purchase price of the merchandise receipted for."

Whatever may have been the uncertainty as to just where the complete title to the goods was and as to just what sort of a title the entruster had in a trust receipt transaction at common law, that has been materially clarified by the Trust Receipts Act adopted by

the General Assembly in 1937. That act defines entruster as follows: " 'Entruster' shall mean the person who has, or directly or by agent takes, a security interest in goods, documents or instruments. . . ." General Statutes, Cum. Sup. 1939, § 1274e A. That is, what the entruster has is a security interest, not necessarily a security title. In the same section it is provided: " 'Security interest' shall mean a property interest in goods, documents or instruments, limited in extent to securing performance of some obligation of the trustee or of some third person to the entruster, and shall include the interest of a pledgee and the title, whether or not expressed to be absolute, whenever such title shall be in substance taken or retained for security only." Subsection B of the act reads in part as follows: "1. A trust receipt transaction within the meaning of this section shall be any transaction to which an entruster and a trustee are parties . . . whereby (a) the entruster or any third person delivers to the trustee goods, documents or instruments in which the entruster (1) prior to the transaction has, or for new value (2) by the transaction acquires, or (3) as the result thereof is to acquire, promptly, a security interest; . . . or (c) the entruster gives new value in reliance upon the transfer by the trustee to such entruster of a security interest in goods or documents in possession of the trustee, and the possession of which is retained by the trustee. . . ." The subsection goes on to provide: "The security interest of the entruster may be derived from the trustee or from any other person, and by pledge or by transfer of title or otherwise." It is clear from these provisions of the act that, in a trust receipt transaction, the security interest which the entruster has may be either in the nature of a lien upon the goods or the title to the

goods, whenever such title shall be in substance taken or retained for security only.

The question in this case, therefore, is whether in this particular transaction the interest which the plaintiff had as entruster was the interest of a lienor or was in substance the title taken or retained as security. To resolve this question regard must be had to the "substance" of the transaction between the plaintiff and Florio. The fact that in the trust receipt Florio acknowledges that he has received the property from "the Premium Commercial Corp. the owner thereof" is of little assistance in determining this question. The reference to the plaintiff as the "owner" of the goods may well be a matter of form and not of substance. As is said in *Davis* v. *Aetna Acceptance Co.*, 293 U. S. 328, 334, 55 Sup. Ct. 151, "The trust receipt may state that the debtor holds the car as the property of the creditor; in truth it is his own property, subject to a lien." So here the trust receipt may state that the plaintiff was the owner of the trucks and still the real substance of the matter be that the title to the trucks was in Florio.

There is nothing in the finding to indicate that the plaintiff as entruster in the trust receipt transaction ever had any title to the trucks in question. It does not appear, for instance, that the manufacturer of the trucks ever sold them to the plaintiff or that Florio ever even undertook to transfer title to it. On the contrary, it does appear that first the chassis and later the bodies of the trucks were delivered by the manufacturer directly to Florio. It is a fair intendment of that finding, nothing being found to the contrary, that it was the intention of the parties that title to the trucks should go, with the possession of them, from the manufacturer to Florio and not to the plaintiff. Moreover, it is to be noted that the trust receipt was

not given to secure the payment of the purchase price of the trucks paid by the plaintiff to the manufacturer, or any part of it. It was given to secure a loan of $2500 made by the plaintiff to Florio, which loan was evidenced by a promissory note. Accordingly, on the finding, the essence of the trust receipt transaction was that Florio, having title to the trucks, gave to the plaintiff a security interest therein to secure it for the loan of $2500. This action merely gave it a lien on the trucks and was in no sense a transfer of any part of the title. That title remained in Florio and was in him at the time of the conditional sale to Neveloff. It follows that, insofar as the conditional sale contract represented that Florio, doing business as Carl's Commercial Garage, had that title and provided that it should remain in him, the contract spoke the truth. It did not inaccurately state the conditions of the sale in that particular.

It is therefore held that the conditional sale contract contained all of the conditions of the sale essential to the transaction and did not misstate any of them. It follows that the plaintiff was entitled to the possession of the trucks pursuant to that contract.

There is no error.

In this opinion the other judges concurred.