**CUMMINGS–LANDAU LAUNDRY MACHINERY CO., Inc.**

v.

**ALDERMAN.**

No. 199, Docket No. 22969.

United States Court of Appeals, Second Circuit.

Argued March 8, 1954.

Decided April 6, 1954.

Benjamin Hantman, New York City (Myron P. Gordon, New York City, of counsel), for petitioner-appellant.

Maxwell A. Alderman, New Haven, Conn., for appellee.

Before CLARK, MEDINA, and HARLAN, Circuit Judges.

HARLAN, Circuit Judge.

The question before us is whether the District Court properly refused reclamation of certain laundry machinery sold by petitioner to the bankrupt under two written conditional sales contracts, entered into on August 19 and September 18, 1952, respectively, under each of which there was a due and unpaid balance. The District Court, confirming the Referee in Bankruptcy, denied reclamation on the ground that both contracts failed to satisfy the requirements of Section 6692, Conn.Gen.Stats., and hence were invalid as to the Trustee in Bankruptcy under Section 6694 of those Statutes. Unreported Memorandum of Judge Hincks, Nov. 5, 1953, D.C.Conn., Bankruptcy, No. 25455.

The purchase price of the machinery sold under the first contract was $1,815, of which $815 was payable with the placing of the order, and the balance in ten equal, "monthly installments" evidenced by a series of notes of $100 each, the first note to mature "30 days after delivery" of the machinery. The second contract called for a purchase price of $1,000, of which $300 was payable with the order, and the balance in seven "monthly installments," evidenced by seven $100 notes, the first note maturing August 1, 1953.

Section 6692, Conn.Gen.Stats., provides that "all contracts for the sale of personal property [with certain exceptions not material here], conditioned that the title thereto shall remain in the vendor after delivery, shall be *in writing, describing* the property, and *all conditions of such sale,* and shall be acknowledged before some competent authority and filed within a reasonable time in the town clerk's office in the town where the vendee resides * * *." (Italics supplied.) Section 6694 makes all conditional sales not complying with Section 6692 "absolute sales except as between the vendor and the vendee and their personal representatives * * *."

Each of the contracts here in question was in writing and was duly acknowledged and filed as required by Sec-

tion 6692. However, the District Court considered that neither contract satisfied the requirement that "all conditions of such sale" be described. As to the first contract, the Court held that the provision that "the balance of $1,000.00 shall be paid in monthly installments as follows: 10 equal notes of $100.00 each * * * The first note to mature: 30 days after delivery," was an insufficient description of the maturity dates of either the first or succeeding installment notes. As to the second contract, the Court held that Section 6692 had not been satisfied in that (1) the $300 payable with the order had not in fact been paid, and (2) the provision that "the balance of $700 shall be paid in monthly installments as follows: 7 notes each in the sum of $100.00 * * * The first note to mature: August 1, 1953," was inadequate to describe the maturity dates of the succeeding notes.

■■ In determining the sufficiency of these two contracts under Section 6692 we recognize both that we must follow the decisions of the Connecticut Courts relating to that Statute, and that those decisions have construed the Statute strictly. Also it may be granted that a contract may be enforceable as between the contracting parties, but nonetheless invalid as against third parties because its terms are not sufficiently definite to effectuate the purpose of Section 6692. See Rhode Island Hospital Nat. Bank of Providence v. Larson, 1951, 137 Conn. 541, 79 A.2d 182, 183–184; cf. Refrigeration Discount Corp. v. Chronis, 1933, 117 Conn. 457, 168 A. 783. Nevertheless, giving full play to these considerations, a majority of us find ourselves unable to agree with the District Court's conclusions.

There is no dispute that the contracts as filed expressed the entire agreement of the contracting parties. In this respect the present case differs from Rhode Island Hospital Nat. Bank of Providence v. Larson, supra, and C. I. T. Corp. v. Meyers, 1942, 129 Conn. 514, 29 A.2d 758, by which the District Court considered itself bound. In each of those cases the Supreme Court of Errors of Connecticut found that the contract as filed did not express the full agreement of the parties. And so the contracts could hardly be considered as meeting the requirement of Section 6692 that such contracts "shall be in writing, describing * * * all conditions of such sale * * *."

■ The first contract here involved provides that the initial installment note is payable "30 days after delivery" of the machinery. This provision is not an uncommon one in transactions of this kind where it is often impossible to fix in advance the exact date of delivery. The provision is adequate to enable interested third parties to ascertain whether and when delivery has been made, and thereby to fix the maturity date of the first installment note. As such, we think it satisfies the requirements of Section 6692. Matter of Peter Karjanes, Unreported, D.C.Conn., Bankruptcy No. 21372, Judge Smith (1942); cf. Premium Commercial Corp. v. Kasprzycki, 1942, 129 Conn. 446, 29 A.2d 610, 611, where the Supreme Court of Errors upheld a conditional sales contract, as against third parties, which "recited that the down payment on the purchase price was $1,000, leaving a balance of $3,603.81 which was to be paid in seventeen monthly payments of approximately $200 each," although the sufficiency of this provision does not seem to have come in question.

We also think that the language in both contracts calling for payment of the deferred balance in equal "monthly installments" of $100 each, taken in connection with the provision that the initial installment was payable "30 days after delivery" (first contract) or on "August 1, 1953" (second contract), was a sufficient description of the maturity date of each of the notes succeeding the initial note. In ordinary parlance "10 equal monthly installments" means that one installment is payable in each of ten successive calendar months, and, when coupled with a time for the pay--

ment of the first installment, that time also fixes the date in each successive month when that monthly installment becomes payable. The rule of strict construction does not require us to read the language of these contracts other than in the ordinary meaning of the words used, and when so read it seems plain that under the first contract the remaining 9 notes would mature in the successive nine months, each on the same day of the month as the day of maturity of the first note ("30 days after delivery"). We reach the same conclusion as to the 6 remaining notes under the second contract; they would mature in the successive six months, each on the first day of the month, which was the maturity day of the first note.

Do the Rhode Island Hospital and C. I. T. cases, supra, compel a different conclusion? We think not, for as we read them, *first*, the actual holdings in those cases, so far as here material, went no further than to establish the unassailable proposition that a writing which does not include all the conditions of sale as agreed to by the parties, does not comply with Section 6692; and, *second*, the ambiguities pointed out in both cases as to the meaning of "month" or "monthly installments" stemmed from the fact that other terms of the contract, which would have removed any ambiguity, had been omitted, although apparently agreed to between the contracting parties. Thus in the Rhode Island Hospital case, the space provided in the written contract for the maturity dates of the notes succeeding the first note had not been filled in, and although the parties had stipulated "July 29" as the due date of the first installment note, *non constat* they might have agreed to a different maturity date for the succeeding monthly notes. Likewise in the C. I. T. case, the written contract failed to include the agreement of the parties as to the maturity date of the first note; hence there was no point of reference by which the maturity dates of the succeeding monthly notes could be fixed.

Nor do we think that the appellee's position is helped by Tokheim Oil Tank & Pump Co. v. Fentress, 4 Cir., 1929, 33 F.2d 730, 65 A.L.R. 710, decided under the Virginia conditional sales contract statute, Va.Code Supp. 1922, Section 5189, and cited with approval by the Connecticut Court in Standard Acceptance Corp. v. Connor, 1940, 127 Conn. 199, 15 A.2d 314, 130 A.L.R. 720. There the contract provided that the deferred purchase price was payable in ten monthly installments "to begin 30 days from date of shipment." In the contract, as recorded, the blank space provided for the date of shipment had not been filled in, and the Fourth Circuit simply held that the contract as recorded did not reflect the full agreement of the parties, as required by the Virginia statute, and that this defect could not be cured by resort to the original written instrument which itself contained a patent ambiguity as to the date of shipment. That is not to say that, absent an agreed specific shipment or delivery date, a provision calling for payment of the first installment upon a fixed number of days after shipment or delivery of the chattels sold is an insufficient description of the due dates of either the first installment or subsequent "monthly" installments.

Finally, we are of the opinion that the circumstance that the $300 down payment called for by the second contract was not in fact paid when due does not touch the adequacy of the contract provision "Cash with order $300" under Section 6692. No case in Connecticut, or elsewhere, holding otherwise has been cited to us. We hold that the default in making this payment no more vitiated the effectiveness of the contract under Sections 6692 and 6694, Conn.Gen. Stats., than would have a default in meeting any of the installment notes. Section 6692 contains no requirement that defaults must be recorded. There is nothing to show in this case that the $300 payment was waived in the sense that it in effect constituted a modifica-

tion of the original contract. On the contrary, Clause 6 of the matter printed on the reverse side of the contract preserved to the seller all remedies in respect of any default, and Clause 7 provided that "All waivers must be in writing and countersigned by an officer of the Seller corporation."

■ While the purpose of these Statutes is to protect third parties dealing in good faith with conditional vendees, it is also manifest that their object is not needlessly to destroy conditional sales contracts. See Rhode Island Hospital Nat. Bank of Providence v. Larson, supra, 79 A.2d 182–183. The desire to give full effect to the basic purpose of these Statutes may sometimes lead to over-refinements, producing results which the Statutes never intended to achieve. In this case we think that the borderline has been crossed.

We conclude that the District Court should have allowed these reclamation claims against the Trustee in Bankruptcy.[1]

Order reversed.

CLARK, Circuit Judge (dissenting).

Judge Harlan's able opinion, however attractive its argument, cannot, I fear, be accepted as the existing Connecticut law of conditional sales. I emphasize the local nature of the problem, because that is its proper setting. Even before the recent violent recrudescence of state law in the federal courts it was accepted doctrine that the extent of protection for creditors of a possessor, though not owner, of personal property was a matter of local policy. Maguire v. Gorbaty Bros., 2 Cir., 133 F.2d 675; Air Equipment Corp. v. Rubbercraft Corp., 2 Cir., 79 F.2d 521. But there does not seem anything particularly unusual or arrestingly harsh as to the state law applied as the basis of decision below. All of the state

courts of our circuit have announced, in express terms, a strict and forceful interpretation of their statutes for the recording of contracts of conditional sales; and we have regularly followed such an approach in supporting over and over the claim of a trustee in bankruptcy over that of a conditional vendor of a doubtfully recorded sale. See, for example, under New York law, Empire State Chair Co. v. Beldock, 2 Cir., 140 F.2d 587, citing earlier cases at page 589, certiorari denied 322 U.S. 760, 64 S. Ct. 1278, 88 L.Ed. 1587; Hoffman v. Cream-O-Products, 2 Cir., 180 F.2d 649, certiorari denied 340 U.S. 815, 71 S.Ct. 44, 95 L.Ed. 599; Newfield v. National Cash Register Co., 2 Cir., 186 F.2d 883, 885; under Vermont law, Fifth Third Union Trust Co. v. Kennedy, 2 Cir., 185 F.2d 833, 835; and under Connecticut law, the two cases first cited herein. These cases show that we have had to repudiate some suggested limitation based on possible notice or knowledge of the creditors and have had to apply the law as written without respect to "harshness"—harshness certainly at least equal to anything here disclosed. And a check of our decisions of recent years shows literally not a single case otherwise. Since, as I hope to show, the Connecticut cases are solidly contra, this is a new and unprecedented decision, whose unsettling effects may reach beyond the particular locale.

At any rate the local concern for upholding the recording acts is traditional, and of course well known to such experienced Connecticut lawyers as the referee in bankruptcy and the trial judge herein. Thus a security transaction in realty, undisclosed of record—as an absolute deed intended as a mortgage—has long led to the *postponement* of the mortgagee to take only *after* claims of attaching creditors. See Ives v. Stone, 51 Conn. 446, recounting earlier cases;

---

[1.] The District Court held that whether or not these contracts were also governed by the Connecticut Retail Installment Sales Financing Statute, Conn.Cum. Supp., Sec. 1223(b) (7) was an irrelevant question in this case. On this appeal neither party raises the point, the appellee expressly disclaiming the applicability of that Statute to these contracts. We therefore find it unnecessary to reach the question.

Second Nat. Bank of New Haven v. Dyer, 121 Conn. 263, 184 A. 386, 389, 104 A.L.R. 1295; Andrews v. Connecticut Properties, 137 Conn. 170, 75 A.2d 402. The same policy has governed the interpretation of the statutes for the recording of conditional sales. "The statutes were not aimed at invalidating, nor do they invalidate, as between the parties, a conditional sale contract, however defective its execution may be. Refrigeration Discount Corporation v. Chronis, 117 Conn. 457, 460, 168 A. 783. They were passed solely for the benefit of the creditors of, and the bona fide purchasers from, the conditional vendee. In re Wilcox & Howe Co., 70 Conn. 220, 230, 39 A. 163. This legislative purpose has been consistently recognized by our previous decisions. We have interpreted the statutes strictly as against the parties to the conditional sale contract and with liberality towards those for whose protection they were enacted [citing cases]." Rhode Island Hospital Nat. Bank of Providence v. Larson, 137 Conn. 541, 79 A.2d 182, 183, 184.

So the policy has been rationalized also as requiring full knowledge to an attaching creditor—one of those who under Conn.Gen.Stat. § 6694 (1949) has the benefit of failure to comply with § 6692—so that he may go forward with the completion of the contract. See, e. g., Premium Commercial Corp. v. Kasprzycki, 129 Conn. 446, 29 A.2d 610, 612. But the smallest doubt that even the *acknowledgment* may be on behalf of the individual, and not his corporation, has resulted in insufficiency of the instrument as against attaching creditors. Commercial Credit Corp. v. Carlson, 114 Conn. 514, 159 A. 352; C. I. T. Corp. v. Hungerford, 123 Conn. 438, 196 A. 151. And the words of § 6692, "all conditions of such sale," have been explicitly interpreted as meaning the same as the spelling out of, say, the Virginia statute, thus making the leading case of Tokheim Oil Tank & Pump Co. v. Fentress, 4 Cir., 33 F.2d 730, 732, 65 A.L.R. 710, a controlling authority. Standard Acceptance Corp. v. Connor, 127 Conn. 199, 15 A.2d 314, 130 A.L.R. 720.

Against this background the late Connecticut cases fit into place and, together and singly, present a pattern which shows our present case to be, in my judgment, *a fortiori*. The Connor case—that of a mistake in stating the date when payments are to begin—expressly holds that the date of completion of payments must be stated as well. C. I. T. Corp. v. Meyers, 129 Conn. 514, 29 A.2d 758, is in accord and in point, since there the contract "provides simply that the balance is due in eighteen monthly payments without specifying when those payments shall commence or end or whether they shall be made in successive months or not." And the last case, Rhode Island Hospital Nat. Bank of Providence v. Larson, supra, 137 Conn. 541, 79 A.2d 182, 184, is substantially harsher than Judge Hincks' decision herein; for there the contract was much more definite. It expressly said "the first installment to be paid on July 29th, 1949 and the remaining installments to be paid on or before the ——— day of each and every month thereafter until this contract is paid in full." This states an ultimate limit for each payment, on any reasonable assumption but a day or two beyond what the vendor may have wanted, so that the construction urged by the minority (and by the trial judge, 17 Conn.Supp. 28) of payment by the end of the month would seem to have been a reasonable reading to be made by any creditor. But the court rejected this outcome to hold the instrument not valid against creditors. So the comment on this decision in 25 Conn.B.J. 346, 348, warns that dealers must take care to "meticulously record all terms and conditions. For even the minority were not willing to settle for less than 'all.'" The contracts before us provide no such way out, for the express statements in the Larson contracts as to the monthly payments are lacking here.

It is to be noted that as to each of the contracts before us two defects were

found below. As to the first it provided for maturity of the first installment note "30 days after delivery" of the purchased machinery; but there was nothing in the contract to fix either (1) the delivery date or (2) the maturity dates of the other nine notes. As to the second it provided (1) for "Cash with order $300.00," though no cash was in fact paid, and (2) for the first installment note to be payable August 1, 1953, but with nothing in the contract to fix the maturity date of the other six notes. Thus the second defect in each of the contracts is the very defect found objectionable in the late Connecticut cases just cited. I see no escape from the force of these precedents. This makes it unnecessary to rule on the other defects, although the lack of a delivery date of the first contract would seem to bring the case within the direct ruling of Tokheim Oil Tank & Pump Co. v. Fentress, supra, 4 Cir., 33 F.2d 730, 65 A.L.R. 710, accepted as authoritative in Standard Acceptance Corp. v. Connor, supra, 127 Conn. 199, 15 A.2d 314, 130 A.L.R. 720. As to the failure to make the stated down payment on the second contract, the authorities are less direct. But this appears to be a default (whether "waived" or not) going not to later breaches of the contract which creditors must be prepared for from the nature of the business transaction involved, but to circumstances affecting the original transfer on condition, thus making the actual terms of transfer different from those recited.

The opinion herein attempts to avoid the force of these cases by advancing the distinction that in them, unlike the present case, the contracts did not recite all the agreed-upon conditions of sale. Unfortunately, however, this is an artificial distinction not justified in either fact or law. As to fact it seems to be based upon the presence of unfilled blanks in the Larson contract and a misstated date in the Connor case, coupled with the assumed absence of a like situation here. But actually here each contract contains three unfilled blanks, in crucial clauses;

and it seems quite likely that, had they been properly filled, there would have been no ambiguity and no case. And there is no basis in the record for the suggestion of "no dispute" here on the completeness of the contracts; while the tribunals below did not discuss the point (an omission itself significant as to their competent view of fact and law), both the referee's certificate and the judge's memorandum imply an inadequacy of the contracts themselves. Quite obviously the fact is that we have here just the same carelessness in completely filling out blank forms as in the Connecticut decisions. In either or any case, whether the parties actually talked the matter over can be only a matter of guess, and fundamental rights should not depend on such speculation; at the very least the identic situations should receive the same judicial treatment. And when we turn to the cases we find there is no basis for such a vast hole in the statutory coverage as would be found if the parties could protect themselves from the force of the recording requirement by agreeing in advance on a convenient vagueness in terms. No case actually suggests such a hole; an occasional judicial reference (as in the Larson case) that the parties have not set forth their full agreement is but a natural recital where that is the fact and does not at all suggest a validation of a contract lacking essential terms, such as the payment of installments. And the contrary is expressly held in one of the two major points of the Meyers case, supra, in demonstrating the inadequacy of the contract reference to "monthly" payments.

The only cases relied on in the opinion are the Kasprzycki case, which does not raise the point on its facts (the opinion does not even attempt a recital verbatim of the contract), and a decision by Judge Smith in 1942 of a case he did not think should be permanently embalmed in the Federal Supplement, to wit, the unreported case of Matter of Peter Karjanes. This covered only a small part of the issues here involved, namely, the first defect of the first contract, as to which

his conclusion would seem doubtful in the light of the explicit statements of the Connor case, supra. Moreover, the late Connecticut cases after his decision have been more direct and precise; there is no reason to believe that he would have been disposed to reject their teachings, had he then had them.

The unsettling effect of the present decision and the resulting problems for Connecticut lawyers in giving advice to prospective vendors of chattels would seem clear. One might deduce from this decision that a vendor might be safely told to keep his contract vague and ambiguous, notably as to the time of installment payments, and yet be protected if everything talked about was included in the contract and thus recorded. But the state cases indicate that such a conclusion would be only a trap for the unwary, so long at least as the parties remained in a state court. Such confusion of precedents is surely unfortunate. I think affirmance here required by the authorities which are binding on us.