EASTERN ACCEPTANCE CORPORATION, A CORPORATION OF THE COMMONWEALTH OF PENNSYLVANIA, PLAINTIFF-APPELLANT AND CROSS-RESPONDENT, v. CAMDEN TRUST COMPANY, A BANKING CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT-RESPONDENT AND CROSS-APPELLANT.

Argued June 7, 1960—Decided June 28, 1960.

*Mr. Paul T. Murphy* argued the cause for the plaintiff-appellant (*Messrs. Crummy, Gibbons & O'Neill,* attorneys).

*Mr. George D. Rothermel* argued the cause for the defendant-respondent (*Mr. Samuel Kalikman,* of counsel).

*Messrs. Green & Yanoff,* attorneys for Commercial Credit Corporation, filed a brief *amicus curiae* (*Mr. Leo Yanoff,* of counsel).

The opinion of the court was delivered by

JACOBS, J.   The plaintiff Eastern Acceptance Corporation brought an action for possession of three automobiles which the defendant Camden Trust Company had taken from the premises of J. O. Evaul, Inc., an automobile dealer in Audubon.   The plaintiff posted a bond and replevied the automobiles and thereafter the Camden County Court rendered a judgment for the defendant in the sum of $4,598.89 and costs.   The plaintiff appealed and the defendant cross-appealed contending that its judgment should have been in the sum of $5,707 plus interest and costs.   On our own motion, we certified the appeal and the cross-appeal while they were pending in the Appellate Division.

Evaul financed its purchase of automobiles from Chrysler Motors Corporation through trust receipts to Eastern Acceptance Corporation. On October 9, 1957 Evaul and Eastern executed a formal statement of trust receipt financing which was duly filed with the Secretary of State in accordance with *N. J. S. A.* 46:35–13. On the same day Evaul and Eastern entered into an agreement which referred to the statement of trust receipt financing, set forth that all financing transactions thereafter conducted between them would be pursuant to said statement and the Trust Receipts Law of New Jersey "unless otherwise specifically stated," and stipulated that "regardless of the form of title documents employed by the several automobile manufacturers, such documents shall be construed as transferring title and interest so as to accomplish a trust receipt transaction." In financing the three automobiles delivered to Evaul the following customary procedure was pursued: Chrysler shipped the automobiles in January and February 1958 to Evaul together with the manufacturer's certificates of origin required by *N. J. S. A.* 39:10–8. See *Miklos v. Liberty Coach Co.,* 48 *N. J. Super.* 591, 595 (*App. Div.* 1958). At the time of shipment Chrysler mailed invoices to Eastern together with sight drafts which Eastern paid. Although the invoices stated that the automobiles were sold to Evaul they embodied security bills of sale to Eastern. At the time the drafts were paid by Eastern, employees of Eastern, acting as agents of Evaul pursuant to a power of attorney theretofore signed by Evaul, executed in the name of Evaul trust receipts, promissory notes, and bills of sale, all to Eastern.

In April and May 1958, Evaul obtained additional financing from the Camden Trust Company on the three automobiles. It executed patently fictitious instruments (see *Canandaigua Nat. Bank & Trust Co. v. Commercial Credit Corp.,* 285 *App. Div.* 7, 135 *N. Y. S. 2d* 66 (1954); 43 *Cal. L. Rev.* 733 (1955); 30 *N. Y. U. L. Rev.* 1536 (1955)) which purported to be conditional sales agreements naming itself as both seller and buyer and these instruments, along

with promissory notes and assignments in blank of the manufacturer's certificates of origin, were delivered to the Trust Company. Evaul retained possession of the automobiles and the Trust Company did not attempt to file the purported conditional bills of sale or to obtain certificates of ownership. See *N. J. S. A.* 39:10–6, 39:10–11. In June 1958, a Trust Company employee who had approved the loans to Evaul on the assumption that the automobiles were "demonstrators," recognized that there was "something unusual" about the transactions, and after several telephone calls were made to local finance companies, the Trust Company ascertained from Eastern that it held trust receipts executed by Evaul. The Trust Company then proceeded, with the consent of Evaul, to take possession of the automobiles from Evaul's premises. In response to an inquiry as to whether it was customary for the Trust Company, when it financed "demonstrators," to determine the prior existence of "floor planning" such as that engaged in by Evaul and Eastern, a Trust Company employee replied that "that would be a normal function" and that "it was an assumption in this case that there wasn't any."

In the course of his determination that judgment should be entered for the defendant, the trial judge expressed the view that in a trust receipts transaction, title must be transferred to the entruster—"the party who advances the money," and he found that "in this particular matter title was transferred from the manufacturer to the dealer or trustee and never was the original title ever placed in the name of the plaintiff or entruster, as required in such a transaction." It is true that in the orthodox common law trust receipts transaction, title is transferred from the manufacturer or distributor to the financing company (the entruster) rather than to the dealer (the trustee or entrustee). See *Vold, Sales* §§ 70–75 (2d ed. 1959); *Gilmore, Chattel Security,* 57 *Yale L. J.* 761, 763 (1948); *Lusk, "Trust Receipts,"* 12 *Temp. L. Q.* 189, 193 (1938). But the Uniform Trust Receipts Act, which was adopted in New Jersey in

1938 (*N. J. S. A.* 46:35–1 *et seq.*), was expressly designed to simplify and facilitate trust receipt financing by providing a ready method of filing to serve as constructive notice to creditors including pledgees and mortgagees, and by eliminating the uncertainties and technicalities of the common law including its requirement that title be transferred by the manufacturer or distributor to the entruster rather than the dealer-trustee.   Thus in the prefatory note to the Uniform Trust Receipts Act (9C *U. L. A.* 220 (1957)) the Commissioners stated that the Act regulated not only orthodox trust receipt transactions but also transactions in which the dealer acquired title and they expressly pointed out that it freed the entruster "from the elaborate procedure necessary under the common law to keep title from ever getting into the trustee."   See *N. J. S. A.* 46:35–2; *Premium Commercial Corporation v. Kasprzycki,* 129 *Conn.* 446, 29 *A.* 2d 610, 613 (*Sup. Ct. Err.* 1942); *Universal Credit Co. v. Citizens State Bank,* 224 *Ind.* 1, 64 *N. E.* 2d 28, 30, 168 *A. L. R.* 352 (*Sup. Ct.* 1945); *Heindl, "Trust Receipt Financing under the Uniform Trust Receipts Act,"* 26 *Chi.-Kent L. Rev.* 197 (1948); *Hanna, "New Jersey Law of Trust Receipts,"* 2 *Mercer Beasley L. Rev.* 1 (1933).

In the *Kasprzycki* case, *supra,* the Connecticut Supreme Court discussed the terms of the Uniform Act and noted that they in effect provided that "in a trust receipt transaction, the security interest which the entruster has may be either in the nature of a lien upon the goods or the title to the goods, whenever such title shall be in substance taken or retained for security only."   29 *A.* 2d, at p. 614.   No useful purpose would be served by endeavoring to determine the precise nature of Eastern's lien or title under the various documents executed by Chrysler and Evaul for in any event it is clear that Eastern was intended to have and did have a "security interest" within the contemplation of the Act.   See *N. J. S. A.* 46:35–1, 46:35–2.   That security interest was sufficient to vest in Eastern, upon the trustee's default, a possessory right against

the trustee (*N. J. S. A.* 46:35–6) and against creditors of the trustee including later pledgees and mortgagees (such as the Trust Company here—see *Canandaigua Nat. Bank & Trust Co. v. Commercial Credit Corp., supra*) who had constructive notice of the entruster's security interest by virtue of its filing under *N. J. S. A.* 46:35–13. See *Universal Credit Co. v. Citizens State Bank, supra,* where the Indiana Supreme Court had this to say:

"The Act with which we are concerned was the result of the needs of merchants and dealers in handling products and machines which are used and needed by the purchasing public. Although originally it was used exclusively in the importing business, the mass production of automobiles, trucks, and various labor saving devices has created a field for the use of loaning corporation facilities which could not be properly served without the creation of the statutory trust receipt.

In addition to filing with the Secretary of State, and thus avoiding a filing or recording for each transaction, it likewise eliminates the necessity of searching a great mass of filed or recorded papers. This filing with the Secretary of State constitutes constructive notice of the proposed method of financing and any rights that may be acquired thereunder. The Act also provides that under some conditions the security lien of the entruster may attach to other goods and things of value that may be received from a sale in the regular course of trade." 64 *N. E.* 2*d,* at *p.* 29

In the instant matter, the Trust Company not only had constructive notice from Eastern's filing under *N. J. S. A.* 46:35–13 but also had such further notice as may fairly attach from the irregular nature of its security transactions with Evaul; its taking of physical possession after receiving actual notice of Eastern's prior security interest gave its position no additional strength and as between it and Eastern there would seem to be no fair basis for not preferring Eastern's claim. Although Eastern's action was in the nature of replevin, its security interest and right to possession as against the Trust Company were clearly sufficient to sustain it without any showing by Eastern of title in the replevied automobiles. See *General Motors Acceptance Corp. v. Smith,* 101 *N. J. L.* 154, 158 (*E. & A.* 1925);

*De Cozen Motor Co. v. Kaufman,* 113 *N. J. L.* 343, 348 (*Sup. Ct.* 1934); *cf. Automobile Banking Corporation v. Weicht,* 160 *Pa. Super.* 422, 51 *A. 2d* 409, 412 (1947); *Commercial Credit Corporation v. Horan,* 325 *Ill. App.* 625, 60 *N. E. 2d* 763 (1945).

The Trust Company asserts, in Point I of its brief, that "Eastern did not acquire title to the three automobiles in compliance with the Motor Vehicle Certificate of Ownership Act." *L.* 1946, *c.* 136 (*N. J. S. A.* 39:10–1 *et seq.*). That Act contains, *inter alia,* provisions relating to the manufacturer's certificate of origin which accompanies the new motor vehicle when delivered to the dealer (*N. J. S. A.* 39:10–8, 39:10–21) and provisions relating to the certificate of ownership which is issued by the Director of Motor Vehicles. *N. J. S. A.* 39:10–6, 39:10–11. See *Miklos v. Liberty Coach Co., supra.* While it prescribes the statutory mode for transferring title (*Eggerding v. Bicknell,* 20 *N. J.* 106, 111 (1955)) it contains nothing which suggests any legislative intent to alter or impair the provisions of the Uniform Trust Receipts Act. *N. J. S. A.* 46:35–1 *et seq.* Both Acts may and should be read together and given fair effect. See *Bruck v. Credit Corporation,* 3 *N. J.* 401, 408 (1950). See also *General Motors Acceptance Corp. v. Smith, supra,* 101 *N. J. L.,* at *p.* 157; *Huber v. Cloud,* 102 *N. J. L.* 181, 183 (*E. & A.* 1925); but *cf. Merchants' Securities Corp. v. Lane,* 106 *N. J. L.* 169 (*E. & A.* 1929), reargument denied 106 *N. J. L.* 576 (*E. & A.* 1930). The Motor Vehicle Certificate of Ownership Act is largely designed to protect the ordinary automobile buyer and, in this regard, it is significant that the Uniform Trust Receipts Act contains a special provision which affords broad protection to the "buyer in the ordinary course of trade." See *N. J. S. A.* 46:35–9. *N. J. S. A.* 46:35–1 expressly provides that a buyer in the ordinary course of trade shall "not include a pledgee, a mortgagee, a lienor, or a transferee in bulk"; it is clear that the Trust Company was not a buyer in the ordinary course of trade

within the contemplation of the Act, and, as we have found earlier in this opinion, its claim was properly subject to the prior security claim of Eastern. See *Canandaigua Nat. Bank & Trust Co. v. Commercial Credit Corp., supra.*

The Trust Company asserts, in Point II of its brief, that "the transaction between Eastern and Evaul was not a valid trust receipt transaction." In support of its assertion it first refers to the fact that in the orthodox common law trust receipts transaction title is transferred from the manufacturer or distributor to the entruster rather than to the trustee; but as we have already pointed out, the Uniform Trust Receipts Act obviated any requirement that Eastern obtain title directly from Chrysler or that it possess anything more than the security interest contemplated by the Act. The Trust Company next refers to the fact that the individual trust receipts were not signed by officers of Evaul and contends that they were "void because they were executed by the employees of an adverse party." But we find nothing in the Act or in the circumstances to indicate that the individual trust receipts were not effective. The statement of trust receipt financing which was filed under *N. J. S. A.* 46:35–13 bears the signatures of the proper officers of both Eastern and Evaul. Similarly the agreement of October 9, 1957 bears the signatures of the vice-president of Eastern and the president of Evaul and in that agreement the trustee undertook to execute a proper trust receipt to the entruster for each automobile financed by the entruster. See *N. J. S. A.* 46:35–4; *In re Le Vee & Co.,* 252 *F. 2d* 214 (7 *Cir.* 1958). The individual trust receipts were duly executed pursuant to and in strict conformity with the power of attorney signed on Evaul's behalf by its proper officers; the fact that the persons designated in the power of attorney were employees of Eastern did not, of itself, preclude them from acting openly and fairly on behalf of Evaul. See *Restatement, Agency 2d* § 392 (1958).

The remaining items in the Trust Company's brief require little attention. It contends that "the trust receipt

for car No. 3 is void because it does not describe the car correctly." One of the three automobiles shipped by Chrysler to Evaul was a 1958 Plymouth, Belv. 8 4-Dr Sed, bearing Serial number LP 2N15987, Engine No. LP 88736. The trust receipt described the automobile as a 1958 De Soto, Belv. 4-Dr SD, Serial No. LP 2N15987, Motor No. LP 88736. It may be noted that the description in the trust receipt was accurate except for its erroneous reference to De Soto rather than Plymouth; but there was no question as to the identity of the automobile which the parties properly intended to cover by the trust receipt and the defendant was not prejudiced by and is in no just position to reap any advantage from the inadvertence. See *Huber v. Cloud, supra,* 102 *N. J. L.,* at *p.* 183. Finally, the Trust Company advances the contention, in support of its cross-appeal, that the amount of its judgment should have been "the value of the cars on the day of their taking"; since we have concluded that the trial court should have decided the matter in favor of Eastern, we need not deal with this contention or with the defendant's cross-appeal.

Reversed, with direction that judgment for the plaintiff be entered in the Camden County Court.

*For reversal*—Chief Justice WEINTRAUB, and Justices BURLING, JACOBS, FRANCIS, PROCTOR, HALL and SCHETTINO—7.

*For affirmance*—None.